**In re Robert B. MILLER, Debtor.**

**Bankruptcy No. 84–00460.**

United States Bankruptcy Court,
District of Columbia.

July 22, 1985.

---

Robert O. Tyler, Washington, D.C., Trustee.

Madeline A. Trainor, Alexandria, Va., for debtor.

F. Robert Troll, Jr., Bethesda, Md., for Nat. Permanent Bank.

James Harden Davidson, Washington, D.C., for Standard Federal Sav. & Loan Ass'n.

Dennis S. Klein, Washington, D.C., for Nat. Bank of Commerce.

## OPINION AND ORDER

GEORGE FRANCIS BASON, Jr., Bankruptcy Judge.

Before the Court are (1) a motion for relief from stay filed by National Permanent Bank ("NPB"), (2) a motion to intervene in support of NPB's motion and to dismiss or for relief from stay filed by Standard Federal Savings and Loan Association ("Standard"), and (3) a motion for relief from stay filed by National Bank of Commerce ("NBC").

NBC wants to foreclose on property located at 1218 Taylor Street, N.E., Washington, D.C. However, according to a written application for continuance filed at the time of the hearing, "a question has arisen as to the debtor's interest in the property," and "the parties have agreed to look into the matter further" before proceeding with the motion for relief from stay. NBC has agreed to continuation of the automatic stay until further order of this Court.

At the hearing, both the Debtor and NPB consented to Standard's motion to intervene. Therefore that motion is being granted by separate order. Standard has withdrawn its motion to dismiss, without prejudice to renewal.

NPB holds a first trust and Standard holds a second trust on property located at 1000 N Street, N.W., Washington, D.C., and both seek leave of this Court to foreclose. The Debtor is apparently the owner of a one-third interest in that property as a tenant in common. The amounts due on the first and second trusts are $73,025.53 and $50,130.81, respectively. In addition, there is a third trust (which is a blanket trust covering other properties as well) in a principal amount of approximately $35,000.00. According to the Debtor's schedules, the fair market value of the property is $112,000. The movant's appraiser appraised the property at $112,500. The Debtor testified that the property has been increasing in value subsequent to the date the schedules were filed and that its fair market value on the date of the hearing was $125,000 to $135,000.

The Court is inclined to believe that the movant's appraisal is too low. The comparables are rather distant from the subject property, whereas the Debtor convincingly testified to extensive renovation and rehabilitation work which has transformed the particular block on which the subject property is located and its immediate neighborhood. The Metro subway stop now being built two blocks away virtually ensures that the subject property's value will continue to rise. In addition, the appraiser made his computations on the basis of above-grade square footage only, not counting basement areas, although the subject property has a finished, one-bedroom English basement income unit which is larger than the basement area of any of the comparables. Indeed, one of the comparables has no basement and no income unit at all. An income unit obviously enhances value considerably. Finally, excessive reliance on use of square-footage statistical comparisons in appraisals of single-family residential properties is inappropriate. Commercial real estate may be bought and sold on that basis, but people do not buy homes based on cost-per-square-foot computations.

However, even accepting the Debtor's own highest estimate of value ($135,000), there is only a small value cushion ($11,843.66) above the first and second trusts (which total $123,156.34). Unless (a) the property is appreciating even more rapidly in value than the evidence offered thus far indicates, or unless (b) the Debtor is willing and able to make monthly payments at least equal to the accruing interest on the first and second trusts, plus 1/12th of the yearly taxes and insurance on the property,

the Debtor has failed to sustain his burden of proving that the trustholders' interests are adequately protected. 11 U.S.C. § 362(d)(1), (g)(2). The Debtor thus far has not made any such offer for periodic adequate-protection payments. Thus, on the record as it now stands, the first and second trust holders are each entitled to relief, under 11 U.S.C. § 362(d)(1), because of lack of adequate protection.

On the present record it appears that the first and second trust holders are also entitled to relief under the two-pronged test of 11 U.S.C. § 362(d)(2). *First,* these two trust holders have sustained their burden of proving that the Debtor has no equity in the property, taking into account the $35,000 blanket third deed of trust which covers this and other properties. 11 U.S.C. § 362(d)(2)(A), (g)(1). The Debtor has not shown that the third trust holders would be willing to release this particular property from the lien of their trust, either as an accommodation or in return for payment of any amount, whether as a lump sum or in installments. Nor has the Debtor shown that this Court should *compel* the third trust holders to release their lien, such as by providing them a replacement lien [1] or by obtaining a determination as to the extent to which their claim is a secured claim and the extent to which it is unsecured,[2] and then paying them the amount of the secured claim, either in a lump sum or in periodic installments. Nor, finally, has the Debtor shown that the aggregate value of the other properties on which the third trust holders have liens are sufficient to satisfy their claim in full, thus perhaps rendering applicable the doctrine of marshalling of assets.[3]

---

1. *See* 11 U.S.C. § 361(2).

2. *See* 11 U.S.C. § 506(a).

3. *See In re Jack Green's Fashions for Men—Big & Tall, Inc.,* 597 F.2d 130, 133 (8th Cir.1979) ("In this case it would be in the highest degree inequitable to allow the Bank to exhaust the business assets of the corporate bankrupt without first looking to the real estate mortgaged to it. To permit such a course would leave the general creditors of the business with nothing."); *In re Spectra Prism Industries, Inc.,* 28 B.R. 397

(Bankr. 9th Cir.1983) ("The marshalling order in the instant case prejudices the interests of the trustee [in bankruptcy] in his capacity [under 11 U.S.C. § 544(a)(1) ] as a judicial lien creditor"); *United States v. Gleneagles Investment Co., Inc.,* 584 F.Supp. 671, 688 (M.D.Pa.1984) ("The doctrine of marshalling of assets requires that where one creditor has two funds or sources from which to seek payment and another creditor has only one, the creditor with two sources must first proceed against the source which the other creditor cannot reach").

*Second*, the Debtor has not sustained his burden of proving that the subject property is necessary to an effective reorganization. 11 U.S.C. § 362(d)(2)(B), (g)(2). This case is (and was initially brought as) a Chapter 7 case. The Debtor has not (at least not yet) exercised his absolute right under 11 U.S.C. § 706(a) to convert the case to Chapter 11 or 13,[4] the reorganization chapters. No reorganization is possible in a Chapter 7 case. So long as this case remains in Chapter 7, therefore, the Debtor will remain unable to rely upon section 362(d)(2)(B) in defense of lienors' lift-stay motions.

The record of this case reflects that the Debtor's mother has filed a Chapter 13 case in Ohio, where she lives. (Case No. B84–2989, Bankr.N.D.Ohio, E.D., filed November 29, 1984. The Debtor's mother apparently owns a two-thirds interest in the subject property as a tenant in common with the Debtor. He was the sole record owner until August 1983. By deed recorded August 31, 1983, he conveyed the property to her. On September 21, 1984 (the same day he filed his bankruptcy petition) she reconveyed to him a one-third interest in the property.[5] The Debtor's mother also is apparently the sole owner of property located at 1002 N Street, N.W., Washington, D.C., immediately adjoining the subject property. According to the Debtor's testimony, the property at 1002 N Street, N.W. has a considerable equity.

The decision of this Court in this Debtor's Chapter 7 liquidation case of course is not binding in the Debtor's mother's Chapter 13 rehabilitation case in Ohio. Specifically, the lifting of the stay in this case will not affect the continuation of the stay in that case. It will be necessary for the secured creditors to apply to the Court in Ohio, if they have not already done so, in order to seek relief from the stay in that case.

NOW THEREFORE IT IS ORDERED that the automatic stay in this case is hereby modified so as to permit National Permanent Bank and Standard Federal Savings and Loan Association each to foreclose pursuant to its deed of trust on the property located at 1000 N Street, N.W., Washington, D.C.,

PROVIDED that either movant that forecloses shall file and serve on the Debtor, counsel for the Debtor and the Trustee a full report and accounting within 10 days after settlement on any foreclosure sale and distribution of proceeds, including in the report a statement as to how many persons attended the auction and how many bid. If either movant or any entity in privity with either movant buys the property in at foreclosure and within two years thereafter transfers the property to a third party not in privity, then such movant shall file a further report and accounting within 10 days after settlement on such transfer, including in the report a statement of all expenses incurred and income received during the period between foreclosure and such transfer to a third party.

---

4. Assuming but not deciding that the Debtor is eligible for relief under Chapter 13. *See* 11 U.S.C. § 109(e).

5. For purposes of the pending lift-stay motions, the validity of these conveyances need not be, and is not, decided.

  Nor need the Court decide whether, as urged by the movants, the Debtor's conveyance to his mother triggered the due-on-sale clauses in the two deeds of trust. However, the Court is skeptical of the movants' contention in this regard, in light of (a) the fact that this was an intra-familial transfer, (b) the pre-petition reconveyance of a part interest to the Debtor, (c) the Debtor's continued residency on the premises, and (d) his assertion "that he continued to make the payments on the subject [first] Deed of Trust for nine months following the transfer to his mother" and that "he attempted to make good the arrearages on the second Deed of Trust on more than one occasion." Debtor's Response to Motion to Obtain Relief from Automatic Stay, ¶ 4 (filed Jan. 28, 1985).