JOHN W. PECK, Senior Circuit Judge.
 

 This case began in bankruptcy court when Allied Credit Corporation (Allied Credit) filed an objection to confirmation of a debtor’s plan under Chapter 13 of the Bankruptcy Code. The bankruptcy court overruled Allied Credit’s objection on June 27, 1991, and the district court affirmed. For the reasons discussed herein, we reverse.
 

 I.
 

 Allied Credit holds a promissory note on the debtor’s principal residence in the original amount of $60,000.00, with a stated interest rate of 19% per annum. Of the $60,000.00, $24,594.90 is principal and the balance is interest, with the annual percentage rate at 21.5%. The terms of the loan require payments through 1999. Allied Credit does not contend that it is underse-cured.
 

 The debtor, Mrs. Davis, owned her residence at the time that she signed the note. In the deed of trust which secures the note,
 
 *210
 
 Mrs. Davis conveyed not only title in trust to this real property which is her principal residence, but also “the Hereditaments and Appurtenances, rents, royalties, profits, and fixtures thereto appertaining, ... releasing all claims to homestead and dower therein.” She also agreed in the deed of trust to keep the buildings on her property insured with hazard insurance in an amount equal to the lesser of the outstanding balance of the indebtedness, or the maximum insurable value of the improvements on her property, with the proceeds payable to the beneficiary of the deed of trust and the policy to be held by the beneficiary.
 

 Mrs. Davis proposed in her Chapter 13 plan that she pay Allied Credit’s net claim of $24,000.00 plus 10% interest at $509.93 per month, with the lien to be released at the completion of the five year plan. She sought confirmation of her plan under the cram-down provision of section 1325(a)(5)(B) of the Bankruptcy Code. 11 U.S.C. § 1325(a)(5)(B). Section 1325(a)(1) requires a bankruptcy court to confirm a Chapter 13 plan if it “complies with the provisions of this chapter and with the other applicable provisions of [the Bankruptcy Code].” Section 1322(b)(2), however, precludes a debtor from modifying the rights of any secured creditor who holds “a claim secured only by a security interest in real property that is the debtor’s principal residence.” 11 U.S.C. § 1322(b)(2).
 

 II.
 

 The district court and the bankruptcy court held that language in the deed of trust which required fire insurance and/or language which covered “rents, royalties, profits, and fixtures” removed Allied Credit’s security interest from the protection of § 1322(b)(2), because the additional language amounted to a security interest in something in addition to Mrs. Davis’ principal residence. Although the debtor argued in her brief that these holdings were correct, at oral argument the debtor argued principally that § 1322(b)(2) does not apply to short-term loans which are not used to purchase or construct a principal residence. Both courts below expressly rejected this argument, as do we.
 

 11 U.S.C. § 1322(b) states in relevant part that a plan may:
 

 (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor’s principal residence. ...
 

 The legislative history of the statute indicates that it was designed to protect and promote “the increased production of homes and to encourage private individual ownership of homes as a traditional and important value in American life.”
 
 Federal Land Bank of Louisville v. Glenn (In re Glenn),
 
 760 F.2d 1428, 1434 (6th Cir.),
 
 cert. denied,
 
 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985). Relying upon this legislative history, the debtor argues that the statute should not be read to protect finance companies specializing in short-term financing, because those creditors are not within the class of traditional, residential mortgageholders which Congress intended to protect. “[R]esort to legislative history for interpretation is improper when a statute is unambiguous.”
 
 Forbes v. Lucas (In re Lucas),
 
 924 F.2d 597, 600 (6th Cir.),
 
 cert. denied,
 
 — U.S.-, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991). As noted by the courts below, the language of § 1322(b)(2) is clear and unambiguous on its face and does not permit the interpretation that the statute has application only to “enabling” loans.
 
 Accord In re Diquinzio,
 
 110 B.R. 628, 629 (Bankr.D.R.I.1990);
 
 In re Reeves,
 
 65 B.R. 898, 900 n. 4 (N.D.Ill.1986);
 
 In re Simpkins,
 
 16 B.R. 956, 966 (Bankr.E.D.Tenn. 1982).
 

 III.
 

 Having determined that the protection of § 1322(b)(2) is theoretically available to a holder of a short-term, non-purchase-money loan on a principal residence, we turn next to the security instrument at hand. Language in the deed of trust requires the debtor to “keep the buildings on said premises insured ... in some good and solvent fire insurance company ... the proceeds of which insurance shall be payable to the
 
 *211
 
 beneficiary herein.” The deed of trust further provides that Allied Credit be named the beneficiary and retain possession of the policy. Finally, Allied Credit has the option of applying all or any portion of the proceeds of the policy against the debt owed to it. The failure to maintain insurance constitutes a default on the underlying indebtedness.
 

 The district court held that this fire insurance requirement, standing alone, is sufficient to take Allied Credit’s claim out of the protection of § 1322(b)(2), reasoning that through the insurance, Allied Credit’s claim is secured by more than the debtor’s principal residence. Several relevant cases have been published since the decision by the district court in this case, including
 
 Matter of
 
 Washington, 967 F.2d 173 (5th Cir.1992). In
 
 Washington,
 
 the debtors had taken out optional credit life and disability insurance at the time of their loan. The Fifth Circuit reviewed the split in authority among various district and bankruptcy courts to determine whether the existence of that type of insurance removes a creditor’s claim from the protection of § 1322(b)(2), but concluded that it does not. In support of its conclusion, the
 
 Washington
 
 court noted that “courts have begun to step ... toward a consensus that credit life and disability insurance does not constitute additional security.”
 
 Id.
 
 at 174. Although
 
 Washington
 
 does not speak directly to hazard insurance, we find its analysis of optional credit life and disability insurance even more compelling when applied to hazard insurance. Like credit life and disability insurance, hazard insurance is merely a contingent interest — an interest that is irrelevant until the occurrence of some triggering event and not an additional security interest for purposes of § 1322(b)(2).
 
 See Washington,
 
 967 F.2d at 174-75.
 

 As noted by one bankruptcy court:
 

 Practically every deed of trust which encumbers improved real property contains a provision requiring the borrower to acquire and maintain insurance coverage to protect against fire and other casualty losses. To hold that this type insurance coverage constitutes an additional security interest would completely eviscerate the protective exception for residential lenders found in- Section 1322(b)(2). Congress would not have enacted a meaningless statute, knowing that practically all of the lenders for whom the protective exception was intended, would be eliminated from the protection solely because they routinely require fire and casualty insurance. As such, the logical, if not inescapable, conclusion is that a fire and casualty insurance policy, naming the lender as a beneficiary, additional insured, or loss payee, does not constitute an additional security interest.
 

 In re Braylock,
 
 120 B.R. 61, 63 (Bankr. N.D.Miss.1990). Unlike credit life and disability insurance, hazard insurance is usually mandatory. To interpret “additional security” to include mandatory hazard insurance would defeat the purpose of § 1322(b)(2), which is to protect creditors.
 
 See Washington,
 
 967 F.2d at 175.
 

 Although the district court cited several cases in which the presence of insurance was held to take away the protection of § 1322(b)(2), most of these cases may be distinguished because they involved a security interest in premiums or in credit life and disability insurance, not hazard insurance. For example, in
 
 Transouth Financial Corp. v. Hill,
 
 106 B.R. 145 (W.D.Tenn. 1989), a district court held that the creditor’s interest in optional credit life and disability insurance, including unearned or returned premiums, took the case outside of the statute. However, the court in that case did not suggest that the same result would obtain merely because of the existence of property or hazard insurance, which was in fact required. Similarly,
 
 In re Wilson,
 
 91 B.R. 74 (Bankr.W.D.Mo.1988) involved a creditor’s interest in two separate policies of optional credit life and disability and a required policy of hazard insurance, together with return premiums for the three policies, and
 
 In re Stiles,
 
 74 B.R. 708 (Bankr.N.D.Ala.1987), involved only credit life insurance, not hazard insurance.
 
 But see In re Selman,
 
 120 B.R. 576 (Bankr.D.N.M.1990) (holding that credit life and hazard insurance constitutes additional security). More recent cases flatly reject
 
 *212
 
 the proposition that a hazard insurance requirement removes the protection of § 1322(b)(2).
 
 See e.g. In re Ireland,
 
 137 B.R. 65 (Bankr.M.D.Fla.1992);
 
 In re Jackson,
 
 136 B.R. 797 (Bankr.N.D.Ill.1992);
 
 In re Braylock, supra; In re Ross,
 
 107 B.R. 759 (Bankr.W.D.Okl.1989).
 

 Allied Credit also points to another provision of the Bankruptcy Code, 11 U.S.C. § 362(d)(1), under which courts have held that a secured creditor is not adequately protected if no hazard insurance exists on the collateral.
 
 See In re Miller,
 
 55 B.R. 49, 50 (Bankr.D.C.1985). Thus, courts interpreting § 362(d)(1) have essentially characterized hazard insurance as an essential protection of the underlying collateral and not as
 
 additional
 
 collateral. To hold that hazard insurance is additional security under § 1322(b)(2) could create anomalous results for those creditors who seek adequate protection under § 362(d)(2), only to lose the protection of § 1322(b)(2). Accordingly, we hold that a requirement of hazard insurance with the creditor designated as beneficiary will not ordinarily take a creditor outside the protection of § 1322(b)(2). This is true even where the creditor retains physical possession of the policy. We reserve for another day the issue of whether additional interests in insurance premiums or other types of insurance might serve as “additional security” for purposes of section 1322(b)(2).
 

 IV.
 

 In addition to its requirement of hazard insurance, the deed of trust conveys to Allied Credit an interest in “the Heredita-ments and Appurtenances, rents, royalties, profits, and fixtures thereto appertaining.” The bankruptcy court held that Allied Credit's interest in “rents, royalties, profits, and fixtures” constitutes additional security for purposes of § 1322(b)(2). The district court indicated some disagreement with this holding, noting significant case law to the contrary. We hold that the referenced phrase refers to benefits which are merely incidental to an interest in real property, and find that Allied Credit’s interest in these incidental benefits does not constitute additional security for purposes of § 1322(b)(2).
 

 Unlike the insurance issue, on which the courts are more evenly split, the clear weight of authority supports a finding that the addition of the boilerplate phrase “rents, royalties, profits, and fixtures” to a mortgage or deed of trust will not generally remove the claim from the protection of § 1322(b)(2). The case at bar is distinguishable from the few cases which support a contrary holding.
 

 For example, in
 
 In re Reeves, supra,
 
 a retail installment contract granted a security interest in the real estate “together with all improvements, tenements, easements, fixtures and appurtenances ..as well as “the above-described goods and all accessories, parts and other property now or hereafter at any time owned by buyer and installed therein or affixed thereto and all proceeds thereof,” and further provided that “any proceeds of disposition of the goods after repossession thereof by the seller may first be applied by the seller to the payment of expenses.”
 
 Id.,
 
 65 B.R. at 900-901. The
 
 Reeves
 
 court recognized that an interest in “fixtures” under real estate law would not remove the claim from the protection of § 1322(b)(2), but held that the above language granted a security interest in fixtures as defined more broadly under Article 9 of the Uniform Commercial Code, including goods which are personalty and can be removed from the property. The court concluded that the creditor’s interest in these removable goods removed the creditor from the protection of § 1322(b)(2).
 
 Id.
 
 at 901. Likewise, language which encompassed goods or property other than real estate fixtures or incidental interests was found to constitute additional security in
 
 Wilson v. Commonwealth Mortgage Corp.,
 
 895 F.2d 123, 124 (3d Cir.1990) (“any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever now or hereinafter installed in or upon the premises”);
 
 In re Klein,
 
 106 B.R. 396, 399 (Bankr.E.D.Pa. 1989) (language included heating appliances);
 
 In re Bender,
 
 86 B.R. 809, 814 (Bankr.E.D.Pa.1988) (“appliances, machín-
 
 *213
 
 ery, furniture and equipment (whether fixtures or not)”);
 
 In re Caster, 71
 
 B.R. 8, 9 (Bankr.E.D.Pa.1987) (“appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever now or hereinafter installed”).
 

 By contrast, the language in the case
 
 sub judice
 
 does not extend Allied Credit’s security interest beyond items which are inextricably bound to the real property itself as part of the possessory bundle of rights. Accordingly, Allied Credit remains within the class protected by § 1322(b)(2), as a creditor whose claim is secured only by a security interest in real property that is the debtor’s principal residence.
 
 Accord In re Hougland,
 
 93 B.R. 718 (D.Or.1988),
 
 aff'd,
 
 886 F.2d 1182 (9th Cir.1989);
 
 In re Jakes,
 
 99 B.R. 393 (Bankr. M.D.Tenn.1989) (holding that fixtures are not separate security, but proceeds from fixtures are additional security);
 
 In re Ireland, supra; In re Jackson, supra
 

 [1]
 

 ;In re Wright, supra; Matter of Moreland,
 
 124 B.R. 921 (Bankr.D.Conn.1991);
 
 In re Williams,
 
 109 B.R. 36 (Bankr.E.D.N.Y. 1989) (refrigerator, window shades and realty fixtures are not other security);
 
 In re Ross, supra.
 

 V.
 

 Although we express a belief that the interest rate charged by Allied Credit on the principal loan is exorbitant, that opinion does not constitute a reason to remove Allied Credit from the protection to which Congress has entitled it. As we have concluded that Allied Credit is within the class of creditors protected by § 1322(b)(2), its claim cannot be modified by the debtor’s proposed plan under Chapter 13. For the reasons stated, the decision of the district court is hereby REVERSED and the cause is REMANDED for further proceedings in compliance herewith.
 

 [1]
 

 . The
 
 Jackson
 
 court held that although an interest in fixtures did not constitute additional security, an interest in rents and profits did. However,
 
 Jackson
 
 involved a rental property, a two-flat residence, and the language was added by the lender in acknowledgement "that the property may be used for a commercial, income-producing purpose.”
 
 Id.
 
 at 803. Where an interest in “rents and profits” is taken in purely residential, non-rental property, courts have rejected the proposition that the interest constitutes additional security.
 
 See, e.g., In re Lee,
 
 137 B.R. 285 (Bankr.E.D.Wis.1991);
 
 In re Wright,
 
 128 B.R. 838 (Bankr.N.D.Ga.1991);
 
 In re Ross, supra.