In re Jeannette R. **GUILBERT.**

Civ. A. No. 94–199L.

United States District Court, D. Rhode Island.

Jan. 9, 1995.

Andrew S. Richardson, Boyajian, Harring-
ton & Richardson, Providence, RI, Joseph M.

DiGianfilippo, Sutherland, DiGianfilippo & Smith, Inc., Woonsocket, RI, for appellant.

Peter J. Brockmann, Quinn, Shechtman & Teverow, Providence, RI, for appellee.

## OPINION AND ORDER

LAGUEUX, Chief Judge.

This matter is before the Court as a bankruptcy court appeal. Jurisdiction has been conferred by 28 U.S.C. § 158(a). The appellant, Jeannette R. Guilbert, has sought review of the bankruptcy court's order declining confirmation of her Chapter 13 plan. 165 B.R. 88. The bankruptcy court ruled that Guilbert's proposed plan was unconfirmable because it contemplated an improper bifurcation of a secured interest in real estate, in contravention of 11 U.S.C. § 1322(b)(2). For the following reasons, the order of the bankruptcy court is reversed.

## I. Facts

The dispute in this case arises out of a loan transaction that occurred on November 30, 1988 between the creditor, Marquette Credit Union ("Marquette"), and the debtors, Jeannette R. Guilbert ("Guilbert") and Leo E. Dufresne ("Dufresne"). The loan was in the amount of $125,500, and it was secured by a mortgage ("Mortgage") encumbering a three unit dwelling located at 215–217 Burnside Avenue, Woonsocket, Rhode Island ("Property").

Guilbert and Dufresne are mother and son. They live in separate units of the Property. The third unit of the Property is, from time to time, rented to third parties in consideration for the payment of rent to Guilbert. Family members have resided in the third unit in the past.

On September 19, 1988, both Guilbert and Dufresne completed a Marquette Consumer Credit Application. According to their applications, the Property was encumbered at that time by mortgages in favor of Bank of New England in the amount of approximately $25,500 and in favor of Fleet Bank in the amount of approximately $75,000. The purpose of the loan for which the applications were submitted was to refinance the Property and to provide approximately $25,000 in startup capital for Dufresne's new business involving security information services.

On November 30, 1988, the closing for the loan transaction occurred. At that time, Dufresne and Guilbert completed and signed a HUD–1A Settlement Statement, which set forth how the Loan proceeds were to be disbursed. Of the total proceeds of $125,500, $25,127.23 was applied to pay off the mortgage to Bank of New England, $76,327.03 was applied to pay off the mortgage to Fleet, and $22,491.74 was disbursed to Guilbert and/or Dufresne. As consideration for the loan, Guilbert and Dufresne executed and delivered a demand promissory note ("Note") in the amount of $125,500 as well as the Mortgage encumbering the Property to Marquette.

Three years later, in October, 1991, Dufresne and Guilbert defaulted on the Note. After the default, in both February and June, 1992, Marquette, by now in Receivership, accelerated the indebtedness pursuant to the Note and made demand upon Guilbert and Dufresne for payment in full. Guilbert and Dufresne failed to pay.

Shortly thereafter, the Receiver for Marquette assigned the loan, the Note and the Mortgage to the Rhode Island Depositors' Economic Protection Corporation ("DEP-CO"). DEPCO now standing in the shoes of Marquette, made demand upon Guilbert and Dufresne for payment of the unpaid balance of the Note in full in May, 1993. When Guilbert and Dufresne failed to pay, DEPCO scheduled a foreclosure sale of the Property for September 30, 1993.

Six days before the foreclosure sale, on September 24, 1993, Guilbert filed her petition for protection pursuant to Chapter 13 of the United States Bankruptcy Code. As part of the plan submitted to the Bankruptcy Court, Guilbert proposed to bifurcate DEP-CO's claim into a secured claim and an unsecured claim, a power conferred on Chapter 13 debtors pursuant to § 506(a). Guilbert sought this bifurcation in part because the estimated or appraised value of the Property was less than the value of the Mortgage. The Property had been appraised on September 30, 1993, by Albert G. Brian, IFA,

who estimated that the then fair market value of the property was $69,000. Guilbert's plan was that she would honor the entirety of the secured portion of DEPCO's claim ($69,-000) and that she would pay the unsecured portion ($53,555.07) pursuant to a 36% plan over 60 months.

DEPCO objected to this bifurcation in the bankruptcy court. DEPCO argued that the Chapter 13 plan proposed by Guilbert could not be confirmed since the plan did not comply with 11 U.S.C. § 1322(b)(2), which precludes the modification of a mortgagee's interest in property used only as the primary residence of the debtor. Bankruptcy Judge Votolato agreed, and, on March 23, 1994, he issued an order that the proposed plan was an impermissible modification of the Mortgage in violation of 11 U.S.C. § 1322 and *Nobelman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). This Court granted Guilbert's motion for leave to appeal on May 3, 1994, and oral argument was heard on July 13, 1994. The matter is now in order for decision.

## II. Standard of Review

■ On an appeal from the Bankruptcy Court, the District Court applies a "clearly erroneous" standard of review to findings of fact and a "de novo" standard of review to questions of law. Bankruptcy Rule 8013; *In re Hammond,* 156 B.R. 943 (E.D.Pa.1993); *In re Hemingway Transport, Inc.,* 126 B.R. 656 (D.Mass.1991); *In re First Software Corp.,* 97 B.R. 711 (D.Mass.1988); *The Bible Speaks v. Dovydenas,* 81 B.R. 750 (D.Mass. 1988). In this case, where a question of law is at issue, this Court is required "to make a judgment independent of the bankruptcy court's, without deference to that court's analysis and conclusions." *In re Nobelman,* 129 B.R. 98, 99 (N.D.Tex.1991). In short, the legal conclusions of a bankruptcy judge are subject to plenary review.

## III. Analysis

■ The principal argument advanced by appellant Guilbert for reversal is that bifurcation of the mortgage rights held by DEPCO is not prohibited by 11 U.S.C.

§ 1322(b)(2). Section 1322(b)(2) allows a Chapter 13 repayment plan to

> modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's primary residence,* or of the holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2) (emphasis added). Guilbert argues that DEPCO's mortgage claim may be modified both (1) because the Property is not the debtor's primary residence and (2) because DEPCO's security interest attaches to more property than "only . . . the debtor's primary residence." These arguments will be considered *seriatim.*

Appellant's first argument seeks to invalidate the protections of DEPCO's rights conferred by § 1322(b)(2) by stating that the Property in this case is not her primary residence. The basis for this argument is the design of the Property: it contains three units, of which Guilbert occupies only one. Another unit is occupied by her son, and the remaining unit has been rented in the past, with the income paid to Guilbert. Appellant offers these facts to prove that the Property is "something other than a residence." Appellant's Brief, at 5.

■ This argument, however, is not persuasive. That the residence in which the debtor primarily resides is also a source of income to the debtor does not render it "something other than a [primary] residence." Regardless of its income-earning functions or its residents, the Property is, has been, and will continue to be Guilbert's primary residence. As Judge Votolato wrote below, the language of § 1322(b)(2) "does not say, nor does it in any way imply that if the debtor's principal residence is also used to house other tenants, paying or otherwise, that [the mortgagee's claim] may be open to modification by the home owner." Indeed, if that *were* the case, homeowners poised to file for protection under Chapter 13 would, as a matter of course, seek temporary tenants prior to their filing, in order to modify the rights that their secured creditors have in their home. Such an apparent loophole is contrary to the spirit of *Nobelman v. Ameri-*

*can Savings Bank, supra,* as well as § 1322(b)(2), which protect creditors who lend to debtors seeking to purchase their principal residence. *See Nobelman,* —— U.S. at ——, 113 S.Ct. at 2111 (Stevens, J., concurring).

Guilbert has never argued that she does not primarily reside at the Property. Rather, her contention is that she does not occupy the whole Property and therefore the Property is not her primary residence. While some courts have found this line of argument persuasive, *see e.g., In re Zablonski,* 153 B.R. 604, 605 (Bankr.D.Mass.1993), this Court does not. Had Congress meant to except creditors holding liens on multi-unit dwellings or dwellings not exclusively occupied by the debtor from the protections of § 1322(b)(2), it could have easily done so. However, given the procreditor history of this portion of the statute, *see Nobelman,* —— U.S. at ——, 113 S.Ct. at 2111 (Stevens, J., concurring), such an intent seems unlikely. As a result, this Court finds appellant's argument misplaced. *Accord In re Glenn,* 760 F.2d 1428 (6th Cir.1985); *In re Ballard,* 4 B.R. 271 (Bankr.E.D.Va.1980).

■ Moreover, as a matter of fact, the Property has essentially been a home to Guilbert's family. Dufresne, her son and a so-called rent-paying tenant of another unit, is also a co-owner of the Property. His "rent" amounts to payment of the property taxes each year, an obligation he would already have as co-owner of the house anyway. Furthermore, when it has been rented, the third unit has at times been occupied by family members. These facts weaken appellant's position that the Property is an income producing property in which Guilbert lives incidently. It is clearly her primary residence.

Therefore, this Court concludes that the Property is Guilbert's primary residence. As a result, appellant's first argument fails to remove DEPCO's claim from the protections available under § 1322(b)(2) to creditors holding a lien on a debtor's primary residence.

■ Appellant's second argument attempts to illustrate that DEPCO is not entitled to the protections accorded by § 1322(b)(2) by focusing on the scope of the Mortgage. Appellant argues that since the Mortgage held by DEPCO attaches to personalty as well as to the primary residence of Guilbert, that Guilbert may bifurcate DEPCO's claims pursuant to § 506(a). DEPCO's additional security interest in the personality of Guilbert and Dufresne, appellant argues, effectively prevents DEPCO from asserting the protections of § 1322(b)(2).

Before considering the merits of this argument, however, it is necessary to discuss the holding of the United States Supreme Court in *Nobelman v. American Savings Bank, supra.* In that case, the Court considered the question of "whether § 1322(b)(2) prohibits a Chapter 13 debtor from relying on § 506(a) to reduce an undersecured homestead mortgage to the fair market value of the mortgaged residence." 113 S.Ct. at 2108. The Court held that § 1322(b)(2) did protect a mortgagee's lien from bifurcation into a secured portion, representing the market value of the mortgaged property, and an unsecured portion, representing the amount by which the mortgage amount exceeds the market value, when the mortgagee's lien attaches only to the debtor's primary residence.

The issue presented by appellant's second argument is different from the issue in *Nobelman.* In this case, appellant has not asked the Court to bifurcate DEPCO's interest into two portions based simply on the premise that the appraised value of the house falls short of the value of the mortgage. Rather, appellant has asked the Court to recognize that the mortgage in this case attaches to property other than the debtor's principal residence and that, therefore, the protections of § 1322(b)(2) are not available to DEPCO. If § 1322(b)(2) is not applicable to DEPCO's lien, then Guilbert may bifurcate the lien under § 506(a) of Chapter 13. *Nobelman* is silent on this question. *In re Hammond, supra,* 156 B.R. at 946–48.

To support her argument that DEPCO's lien attaches to more property than simply her primary residence, Guilbert relies on several paragraphs of the Mortgage agreement. In particular, Guilbert cites the following portions: (1) ¶ II., which gives DEPCO a

mortgage in "buildings and improvements ..., together with all fixtures and tangible personal property now or hereafter owned by [Guilbert and Dufresne] or in which [Guilbert and Dufresne have] an interest (but only to the extent of the interest) and placed in or upon the [Property] or the buildings or improvements thereon"; (2) ¶ IV., which gives DEPCO an interest in "equipment and fixtures of every kind and description now or hereafter owned by [Guilbert and Dufresne] or in which [Guilbert and Dufresne have] any interest (but only to the extent of the interest) and situated or to be situated upon or in, or used in connection with the operation of, the [Property] ..., together with any renewals, replacements, or additions thereto, substitutions therefore [sic] and proceeds thereof; and (3) **Covenant 9,** in which Guilbert and Dufresne "assign to [DEPCO] all rents due or to become due in the future from the occupants of the [Property], or any part thereof, on any existing or future lease or tenancy...."

DEPCO has responded by arguing that the sum of the above-cited language is nothing more than "boilerplate language" and that, as such, the language cannot be used to remove DEPCO's claims from the protections of § 1322(b)(2). As support, they rely on *In re Davis,* 989 F.2d 208 (6th Cir.1993). In that case, the Sixth Circuit considered the question of whether a mortgage contract that mentioned "rents, royalties, profits, and fixtures" should be removed from the prohibition against bifurcation. In holding that the mortgage could not be bifurcated, the Court stated that the language "did not extend the security interest beyond items which are inextricably bound to the real property itself as part of the possessory bundle of rights." *Id.,* at 212.

█ The Mortgage in this case can be distinguished on its face from the one in *Davis.* The mortgage contract in *Davis* only applied to "rents, royalties, profits, and fixtures"; it made no mention of personalty at all. In this case, however, the Mortgage specifically mentions both "equipment" and, more importantly, "tangible personal property," and it contains no provisions to modify or restrict this interest. While it is true, as

DEPCO argues, that the original mortgagee did not file any UCC statements to perfect the security interest in the personalty, perfection does not relate to the validity of the agreement between the appellant and Marquette and now its successor DEPCO. *See* James J. White, et al., *Uniform Commercial Code,* § 22–3 (3d ed. 1988). The only relevant question is whether a security interest in personalty has been created by the Mortgage. The plain language of the Mortgage agreement here clearly does that, both by using the word "secures," a so-called "magic word," *In re Penn Housing Corp.,* 367 F.Supp. 661 (W.D.Pa.1973), and by adequately describing the collateral, *In re Genuario,* 109 B.R. 550 (Bankr.D.R.I.1989) (holding that "general intangibles" was a sufficient description of a liquor license).

█ The nature of the loan in this case also strongly suggests that the language in the Mortgage creating a security interest in personalty was clearly intended and was not merely a "boilerplate provision." The Marquette applications filed out by Dufresne and Guilbert noted that not only was the loan to be used to refinance the Property, but also was to be used to provide the startup capital for a business that Dufresne intended to develop in security information services. The inference is compelling that the security interest in the personal property on the premises was meant to secure, at least in part, the business portion of the loan.

The Mortgage in this case is similar to the mortgage considered in *In re Hammond,* 27 F.3d 52 (3rd Cir.1994). In that post-*Nobelman* case, the Third Circuit considered the issue of whether bifurcation of a claim held by a mortgagee was appropriate under § 506(a) in a case where the mortgage security was not only an interest in the primary residence of the debtor, but also an interest in "appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever." *Id.,* at 57. In deciding that bifurcation was permissible, the Third Circuit held that the additional personalty named in the *Hammond* mortgage created a broader claim than one "secured only by a security interest in the real property that is the debtor's principal residence." As a re-

sult, the protections of § 1322(b)(2) were unavailable to the mortgagee.

Those observations are fairly applied to the facts of this case. In this Mortgage, where the language "tangible personal property" refers to a category of property significantly broader than the one considered in *Hammond,* the Mortgage clearly creates a claim in property other than the debtor's primary residence, and, like the mortgage in *Hammond,* it cannot enjoy the protections of § 1322(b)(2). At no time was the Mortgage modified so that it would apply only to the real property serving as Guilbert's primary residence.

Since DEPCO, as mortgagee, cannot claim the protections of § 1322(b)(2), bifurcation of the Mortgage is permissible. Therefore, the order of the bankruptcy court is reversed and the matter is remanded for reconsideration of the debtor's plan in light of this Opinion.

It is so ordered.