**In re Anthony Ray ESCUE, Debtor.**

**Bankruptcy No. 395–02976.**

United States Bankruptcy Court,
M.D. Tennessee.

May 1, 1995.

Renard A. Hirsch, Smith & Hirsch, Nashville, TN, for debtor.

David M. Smythe, Nashville, TN, for First American Bank.

### MEMORANDUM

GEORGE C. PAINE, II, Chief Judge.

#### I. Introduction

This matter is before the Court on the motion of First American National Bank ("FANB") for relief from the automatic stay pursuant to 11 U.S.C. § 362 in order to pursue foreclosure on debtor's principal residence for which FANB is the primary mortgage holder. Anthony Ray Escue ("Debtor") asserts that no cause exists to grant relief from the stay. A hearing was held on this matter on June 6, 1995. For the reasons hereinafter cited, the Court denies the relief sought by FANB. The following constitute the Courts findings of fact and conclusions of law. FED.R.BANKR.P. 7052.

#### II. Facts

The facts, as summarized by this Court are not in dispute by the parties. Debtor filed a petition for relief under Chapter 13 of the United States Bankruptcy Code on May 1, 1995. FANB is a perfected first lien mortgage creditor with respect to debtor's principal residence by virtue of a Deed of Trust

properly recorded at the Register's Office in Sumner County, Tennessee. The Deed of Trust secures a promissory note dated March 23, 1990 in the original principal amount of $65,000.00. The note fully matured, becoming due and payable, on March 23, 1995, prior to debtor's bankruptcy filing, but the debtor failed to make the required payment to FANB. As of May 11, 1995, the date that FANB filed its relief stay motion, the total unpaid balance of the note is $57,272.56 plus attorney fees and expenses with interest accruing at the rate of $15.00 per diem.

Debtor's Chapter 13 Plan proposes to pay in full, over the life of the Plan, the indebtedness to FANB. FANB, however, filed this motion for relief from the automatic stay arguing that the mortgage debt matured prepetition, and that the debtor is not entitled to modify its rights as a mortgage-holder within the Chapter 13 Plan. Debtor responded setting forth two reasons why it could provide for FANB's claim within the Plan. First, the Debtor argues that 11 U.S.C. § 1322(b)(2) provides that the rights of secured claim holders can be modified if the claim is secured by additional property other than the debtor's principal residence. Specifically, the Debtor asserts that the Deed of Trust in this case extends a security interest in additional property such as rents, profits, and fixtures which is in addition to the principal residence removing FANB from the protection of 11 U.S.C. § 1322(b)(2). Secondly, the Debtor argues that the Bankruptcy Reform Act of 1994 added subsection (c)(2) to section 1322 to allow debtors to cure defaults in mortgage indebtedness which have matured or ballooned prior to the date on which a final plan payment is due. The Court will address each of debtor's arguments.

### III. Conclusions of Law
#### A. 11 U.S.C. § 1322(b)(2)

■ In order for FANB to receive the protection afforded by 11 U.S.C. § 1322(b)(2), it must be a mortgage holder which is secured "only by a security interest in the real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2) (Clark Boardman Callaghan 1995). Debtor

maintains that the language of the Deed of Trust grants FANB a much broader security interest than just the "principal residence of the debtor." Specifically, debtor argues that the following language gives FANB additional security in the debtor's personalty:

> That Grantor, in consideration of the debt and trust herein after created, ... does hereby grant, sell and convey unto [the Trustee] ... [the particular real estate constituting debtor's residence] together with (1) all the Improvement now on or which may be hereafter placed on said land during the existence of this lien and all materials, equipment, furnishings, or other property whatsoever installed or to be installed or used or about the building or buildings on said land, including but not limited to all heating, plumbing, lighting, water-heating, cooking, refrigerating, incinerating, ventilating and air conditioning equipment, storm doors and windows, shades, awnings, blinds and linoleums, and property of like nature, all of which property and things are hereby declared to be permanent accessions to the freeholds and part of the realty conveyed herein; and (2) all tangible personal property of whatever kind and nature now or hereafter located on the aforedescribed premises, including but not limited to furniture, tools, machinery and equipment; provided however, that this clause (2) hereof shall not apply to any indebtedness governed by the Federal Trust and Lending Act. All of the foregoing shall be security for the indebtedness and obligations herein mentioned.

The transaction was, in fact, governed by the Federal Truth and Lending Act making clause (2) above not part of the security granted to FANB. Debtor, however, asserts that the extra security granted by clause (1) removes FANB from the protection of 11 U.S.C. § 1322(b)(2).

The Sixth Circuit Court of Appeals addressed what constitutes additional security which would remove a mortgage holder form the provisions of 11 U.S.C. § 1322(b)(2) in its decision *Allied Credit Corp. v. Davis (In re Davis)*, 989 F.2d 208 (6th Cir.1993).[1] In that

1. In *Nobelman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228

case, the debtor argued that boilerplate phrases such as "rents, royalties, profits, and fixtures" found in the deed of trust constituted additional security which would remove the home mortgage company from the provisions of 11 U.S.C. § 1322(b)(2). *Davis*, 989 F.2d at 212. The Sixth Circuit concluded that such items were "inextricably bound to the real property itself as part of the possessory bundle of rights" and did not grant additional security. The court did however, recognize decisions from other jurisdictions which had reached differing results when the

boilerplate language specifically mentioned personalty or other non-fixture items. *Davis*, 989 F.2d at 212–13.[2] Several decisions since the Sixth Circuit's opinion in *Davis* have considered the question of what constitutes security beyond the debtor's principal residence when personalty or other non-fixture items are specifically mentioned.[3]

The District Court for the District of Rhode Island most recently addressed this issue in *In re Guilbert*, 176 B.R. 302 (D.R.I. 1995). In that case a mortgagee objected to the modification of its rights in contravention

(1993) the United States Supreme Court considered the question of "whether § 1322(b)(2) prohibited a Chapter 13 debtor from relying on § 506(a) to reduce an undersecured home mortgage to the fair market value of the mortgaged residence." The Court held that § 1322(b)(2) did protect a mortgagee's lien from bifurcation into a secured portion, representing the amount which the mortgage amount exceeds the market value, when the mortgagee's lien attaches only to the debtor's primary residence. The Supreme Court left unanswered the question presented in this case, whether a claim is removed from the protection of § 1322(b)(2) entirely when it grants additional security in something other than the realty of the debtor's primary residence.

Some of the questions left unanswered by *Nobelman* were noted by Judge Keith Lundin in his Chapter 13 treatise:

> The "boilerplate" case law is hopelessly irreconcilable because Congress did not contemplate that the intensely technological language of mortgage instruments would be tested against the simple but precise language of § 1322(b)(2). Without congressional action, after *Nobelman*, there is every incentive for debtors to microscopically parse the language of every mortgage in search of errant appurtenances, hereditaments, and other morsels of unreal collateral in hopes of upsetting the sanctity of the "rights" protected from modification by § 1322(b)(2). No peace will come to this area of law until Congress clarifies the statute.

K. Lundin, Chapter 13 Bankruptcy, § 4.44 (1994).

2. Other decisions recognized by *Davis* were as follows: *In re Reeves*, 65 B.R. 898 (N.D.Ill.1986) (finding an interest in fixtures would not remove the claim from 11 U.S.C. § 1322(b)(2), but that the specific language of that mortgage defined fixtures more broadly and included personalty which would remove the claim from 11 U.S.C. § 1322(b)(2)); *Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123 (3d Cir.1990) (language which stated "any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever ..." granted additional security removing the claim from 11 U.S.C. § 1322(b)(2)); *In re Klein*, 106 B.R. 396

(Bankr.E.D.Pa.1989) (claim removed from 11 U.S.C. § 1322(b)(2) by language including heating appliances); *In re Bender*, 86 B.R. 809, 814 (Bankr.E.D.Pa.1988) ("appliances, machinery, furniture and equipment (whether fixtures or not)" removed from protection of 11 U.S.C. § 1322(b)(2)); *In re Caster*, 77 B.R. 8 (Bankr.E.D.Pa.1987) ("appliances machinery, furniture and equipment (whether fixtures or not) ..." removed claim from 11 U.S.C. § 1322(b)(2)).

3. *See In re Halperin*, 170 B.R. 500 (Bankr.D.Conn.1994) (residential mortgagee's security interest which extended to rents, royalties, oil and gas rights, profits, stocks, and fixtures did not remove mortgage from protection of § 1322(b)(2)); *In re Harris*, 167 B.R. 813 (Bankr.D.S.C.1994) (residential mortgage also covering rents and fixtures did not excluded mortgagee from protection of § 1322(b)(2)); *In re Spano*, 161 B.R. 880 (Bankr.D.Conn.1993) ("lands, premises, and property ... with the buildings and all other improvements thereon ... together with all and singular the privileges and appurtenances thereto belonging or appertaining, and the rents, issues and profits thereof ... and all fixtures now or hereafter attached" found not to be additional security, but just a more detailed description of real property); *In re Pruitte*, 157 B.R. 662 (Bankr.E.D.Mo.1993) (improvements, easements, rights, appurtenances, water rights, and fixtures does not constitute additional security); *In re Jackson*, 136 B.R. 797 (Bankr.N.D.Ill. 1992) (security interest in fixtures and insurance proceeds does not constitute additional security, but state law governs mortgagee's rights to rents). *But see Johns v. Rousseau Mortgage Corp. (In re Johns)*, 165 B.R. 405 (E.D.Pa), *aff'd* 37 F.3d 1021 (3d Cir.1994) (Chapter 13 plan could modify residential mortgagee's rights where mortgagee's interest was secured by other collateral including "alterations, additions, improvements, appliances, machinery, furniture, and equipment"); *In re Oglesby*, 150 B.R. 620 (Bankr.E.D.Pa.), *order vacated on other grounds*, 158 B.R. 602 (E.D.Pa.1993) ("oven, dishwasher, fan, rents, issues and profits from the home" removed the protection of § 1322(b)(2)).

of 11 U.S.C. § 1322(b)(2) under the debtor's proposed plan. The debtor argued that the language in the mortgage gave the mortgagee an interest beyond her principal residence. The mortgage provided in part that the mortgagee was given an interest in:

> buildings and improvements ... together with all fixtures and tangible personal property now or hereafter owned by [the homeowners] or in which [the homeowners have] an interest (but only to the extent of that interest) and placed in or upon the [Property] ... which gives [the Mortgagee] an interest in equipment and fixtures of every kind and description now or hereafter owned ... or in which [the homeowners] have any interest (but only to the extent of that interest) and situated or to be situated upon or in, the [Property] ...

*Guilbert*, 176 B.R. at 307. Citing the language of the Sixth Circuit's opinion in *Davis*, the Court in *Guilbert* noted that its case was easily distinguishable from *Davis* because the Deed of Trust contemplated in *Davis* made no mention of personalty.

The mortgage in *Guilbert* specifically mentioned both equipment and more importantly "tangible personal property," *Guilbert*, 176 B.R. at 307. The mortgagee's rights were not being impermissibly modified, according to the Court, because the mortgagee was secured by adequately described collateral which was independent from the debtor's residential real property. The language was not merely intended as "boilerplate" jargon, but was intended to create a security interest in personalty. *Guilbert*, 176 B.R. at 307–308.

In a decision, which was also a post-*Nobelman*, the Third Circuit Court of Appeals reached a similar conclusion with mortgage language which granted security in "appliances, machinery, furniture, and equipment (whether fixtures or not) of any nature whatsoever." *In re Hammond*, 27 F.3d 52 (3d Cir.1994). In that case the Court found that

if a mortgage company wished to afford itself of the shelter of § 1322(b)(2) then it should delete the language granting the additional security from the security agreement. *Hammond*, 27 F.3d at 57 (*citing* 5 COLLIER ON BANKRUPTCY ¶ 1322.06 at 1322–14–15; *Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d at 129 (admonishing the mortgagee to delete the additional language to be protected by § 1322(b)(2))). The *Hammond* Court followed earlier decisions of that Circuit, namely *Wilson, supra* and *Sapos v. Provident Institution of Savings in Town of Boston*, 967 F.2d 918 (3d Cir.1992), and perceived such collateral to be personalty of independent value rather than collateral merely incidental to an interest in real property.

The Bankruptcy Court for the Western District of Pennsylvania also grappled with this issue in *In re Lutz*, 164 B.R. 239 (Bankr. W.D.Pa.1994).[4] The debtor objected to the claim of a bank which held a first mortgage on his property, and sought to "cram down" the amount of the bank's security interest pursuant to § 506(a). The bank argued that it was protected by the provisions of § 1322(b)(2) because its claim was secured only by a lien on the debtor's principal residence. *Lutz*, 164 B.R. at 241. The relevant provisions of the mortgage agreement gave the bank a security interest in:

> the buildings, improvements and fixtures, as well as all additions or improvements now or hereafter made to said premises, streets, alleys, passages, ways, waters, water courses, rights, liberties, privileges, hereditaments, and appurtenances whatsoever thereunto belonging, or in any wise appertaining, and the reversions and remainders, rents, issues and profits thereof, and in addition thereto the following described household appliances, which are, and shall be deemed to be fixtures and part of the realty, and are a portion of the

---

4. *See also Hutchins v. Commonwealth Mortgage Corp.*, 165 B.R. 401 (E.D.Pa.1994) (district court affirmed bankruptcy court's decision to allow bifurcation of residential mortgagee's claim secured also by appliances, machinery, furniture, and equipment); *Peoples First National Bank v. Haraschak (In re Haraschak)*, 169 B.R. 325 (Bankr.M.D.Pa.1994) (residential mortgage secured by all improvements, fixtures, appliances, and equipment was excluded from protection of § 1322(b)(2)); *In re Tallo*, 168 B.R. 573 (Bankr. M.D.Pa.1994) (additional security in "rents, issues and profits" removed the mortgagee's protection against modification of claims secured only by debtor's principal residence).

security for the indebtedness herein mentioned, namely [no personal property listed] provided, however that the Mortgagor shall be entitled to collect and retain the said rents, issues and profits until default hereunder.

*Lutz,* 164 B.R. at 241. After reviewing relevant state law which defined fixtures, rents and profits, the Court in *Lutz* concluded that no provision in the mortgage granted additional security other than the realty containing debtor's principal residence. All the described collateral was found to be merely incidental to the bank's interest in the real property.

The Bankruptcy Court for the District of Massachusetts developed a "litmus test" for determining what equated to security beyond the real property which is the debtor's residence in *In re French,* 174 B.R. 1 (Bankr. D.Mass.1994). In that case the Mortgage Agreement granted the mortgage company an interest in:

> all portable or sectional buildings at any time placed upon said premises, and all furnaces, ranges, heaters, plumbing, gas and electric fixtures, screens, mantels, shades, screen doors, storm doors and windows, oil burners, gas or electric refrigerators and all other fixtures of whatever kind and nature at present or hereafter installed in or on the granted premises in any manner which renders such articles usable in connection therewith so far as the same are or can be made a part of the realty, and all material apparatus or supplies intended to enter into the construction, repair or remodeling of the buildings on said premises, or placed therein or thereon prior to the full payment and discharge of the mortgage.

In the *French* decision the Court followed the reasoning of the Sixth Circuit's decision in *Davis.* Such items of collateral, according to the Court in *French,* were merely further description of the mortgagee's interest in the real property, and mere incidents to the interest in real property.

Unlike some of the other courts confronting this issue, the Court in *French* reasoned that whether a mortgagee enjoys a perfected security interest in an asset is not defined by reliance upon state law definitions of real property, but is a matter of federal bankruptcy law. *French,* 174 B.R. at 7. The test of whether a mortgage grants additional security is whether or not the additional collateral set forth in the subject mortgage is more than an enhancement which can be made a component part of the real property or is of little or no independent value. The *French* Court concluded that collateral which is a mere enhancement should not cause a forfeiture of rights under the anti-modification provisions of § 1322(b)(2), and that this interpretation of § 1322(b)(2) was most consistent with the Congressional intent to "encourage the flow of capital into the home lending market." *Id. (quoting Nobelman,* ——— U.S. at ———, 113 S.Ct. at 2112).

This Court finds that the language of the Deed of Trust in favor of FANB does indeed grant security above that of the real estate of the principal residence of the debtor. The verbiage of the Deed of Trust which effectively removes the shield of § 1322(b)(2) grants a security interest in:

> other property ... installed or to be installed **or to be used about the building** ... including ... all heating, plumbing, lighting, water-heating, cooking, refrigerating, incinerating, ventilating and air conditioning equipment ... and property of like nature ... which ... are hereby declared to be permanent accessions to the freehold and part of the realty conveyed.

The Deed of Trust purports to cover personalty by its inclusion of property "to be used about" the premises. FANB endeavors to include that same property as property which is simply inextricably bound to the real estate by proclaiming that property to be "permanent accessions to the freehold." In other words, just because the Deed of Trust states that a refrigerator, space heater, lamp, or other similar item which is "used about the premises" is a fixture, does not make it so.

■ The Deed of Trust reaches beyond a description of components of the real property and purports to create a security interest in personalty which has value independent from the real estate. The *Davis* decision makes clear that the anti-modification protec-

tion of § 1322(b)(2) are available to a mortgagee only as long as the security instrument grants no interest above those which are "inextricably bound to the real property itself." *Davis*, 989 F.2d at 213. The present case clearly falls outside that requirement.

The Court therefore finds that under § 1322(b)(2), FANB holds an interest which is secured by more than "real property that is the debtor's principal residence." Accordingly, the debtor is permitted to modify the rights of the mortgagee in accordance with the provision of the United States Bankruptcy Code.

FANB contends that even if the protections of 11 U.S.C. § 1322(b)(2) are unavailable, the debtor is still prohibited from providing for payment of his mortgage over the life of the Chapter 13 Plan because the mortgage matured prepetition. The Debtor asserts that § 1322(c)(2) permits him to modify the mortgage terms, and pay FANB in full during the life of his Chapter 13 Plan.

### B. 11 U.S.C. § 1322(c)(2)

■ The remaining issue, therefore, is whether the Debtor may pay the final payment of a fully matured mortgage through a Chapter 13 Plan. Although not perfectly clear from the language of the newly added 11 U.S.C. § 1322(c)(2), the Court is of the opinion that Congress intended for debtors to be able to cure "stub" or "short-term" mortgages which mature or balloon prior to filing of the petition.

5. Section 1322(c)(2) also contains the language limiting the mortgagee's interest to "real property that is the debtor's principal residence." Therefore, because FANB's Deed of Trust extends to additional property other than the debtor's residential realty, the debtor need not rely upon the provisions of § 1322(c)(2) to cure the mortgage by providing for payment in full over the life of the plan. In other words, the debtor's ability to cure in this case is not dependent upon § 1322(c)(2) because the remaining provisions of Title 11 allow him to cure where the interest of the secured creditor is broader than just the debtor's residential realty.

6. *In re Eason*, 181 B.R. 127 (Bankr.N.D.Ala. 1995) was a pre-Reform Act case, but considered as persuasive authority the impact of the adoption of 11 U.S.C. § 1322(c)(2). In *Eason*, a debt-

Section 301 of the Bankruptcy Reform Act of 1994 was amended to include subsection (c) to 11 U.S.C. § 1322. Subsection (c)(2) provides as follows:

> (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.[5]

11 U.S.C. § 1322(c)(2) (Clark Boardman Callaghan 1995). Subsection (c)(2) appears to contemplate mortgages which mature postpetition, but the Congressional intent of this statute when considered in light of the other provisions of Chapter 13, and the overall objectives of bankruptcy, suggest that Congress also intended for debtors to be able to cure defaults on short-term mortgages which mature or balloon prior to the petition date.

■ Chapter 13's overall policy is to facilitate the adjustment of debts by allowing flexible repayment schedules to promote Chapter 13 repayment rather than liquidation under Chapter 7. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 118 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 141 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The flexibility permitted in Chapter 13 Plans depicts the "central element in the implementation of the Congressional goal to encourage expanded use of Chapter 13." *In re Eason*, 181 B.R. 127 (Bankr.N.D.Ala. 1995).[6] Furthermore, 11 U.S.C. § 1322(b)(2)

or's mortgage had a balloon payment which came due prior to the filing of the petition. The Court concluded that given the Congressional intent as evidenced by the adoption of 11 U.S.C. § 1322(c)(2), the debtor could cure the default by repaying the ballooned mortgage payment in full over the life of the plan pursuant to 11 U.S.C. § 1322(b)(2).

In *Eason*, the Court considered the legislative history of Chapter XIII under the Bankruptcy Act, section 1322(b)(5), section 1325(a)(5), and Chapter 13 as a whole. Without repeating that Court's findings here, the court in *Eason* concluded that all of the legislative history indicated that Congress intended debtors to be able keep their homes under Chapter 13, and Congress intended mortgages which matured or ballooned prior to filing to be allowed to be cured under a Chapter 13 Plan.

specifically provides for the curing of "any default."

The legislative history of 11 U.S.C. § 1322(c)(2) states that subsection (c)(2) was intended to overrule *First National Fidelity Corp. v. Perry,* 945 F.2d 61 (3d Cir.1991) in which the Third Circuit Court of Appeals held that a debtor could not utilize section 1325(a)(5) to provide for a home mortgage protected by from modification by section 11 U.S.C. § 1322(b)(2). Section 1322(c)(2) specifically permits certain mortgages to be modified and provided for in 11 U.S.C. § 1325(a)(5). *See* King, COLLIER ON BANKRUPTCY ¶ 1322.14B, at 1322–50 (15th ed. 1993). Because a Chapter 13 Plan may not extend beyond five years, section 1322(c)(2) will only cover short-term mortgages, long-term mortgages on which the debtor has nearly completed payment, and mortgages with balloon payments. Section 1322(c)(2) also overrules that part of the United States Supreme Court's decision in *Nobelman v. American Savings Bank,* — U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) which dealt with these short-term mortgages, balloon payment mortgages and long-term mortgages nearing the end of their payment term.[7]

Although no reported case appears to have decided this issue, this Court concludes, that based upon the legislative history, the stated objectives of Chapter 13, and Congress' preference for a Chapter 13 filing rather than an Chapter 7, that Congress intended to allow debtors to cure a mortgage indebtedness which mature or ballooned prepetition by providing for full payment of to the mortgager over the life of the Chapter 13 Plan. Accordingly, the Court overrules FANB's motion for relief from the automatic stay and its objections to confirmation of the Debtor's Chapter 13 Plan based upon this same theory.

## IV. Conclusions

Based upon the foregoing, the Court finds that FANB should be denied relief from the automatic stay, and any like objections to confirmation based on the provisions of § 1322(b)(2) are hereby overruled. Section 1322(b)(2)'s anti-modification provision is not available to FANB because its Deed of Trust purports to grant a security interest in property beyond that which is the principal residence of the debtor. In addition, the Court overrules FANB's motion for relief from stay and any like objections to confirmation based upon the newly adopted 11 U.S.C. § 1322(c)(2). In the appropriate case, the Court finds that § 1322(c)(2) would provide a remedy to cure a defaulted mortgage which matures prepetition.[8]

It is, THEREFORE, so ordered.

---

7. King, COLLIER ON BANKRUPTCY ¶ 1322.14B, at 1322–50 (15th ed. 1993). The Collier commentary also notes that some of these short-term mortgages have high interest rates that are particularly unfavorable, and the long-term mortgages nearing completion often means that a debtor has a large amount of equity in the home which could be lost in foreclosure.

8. *See supra footnote 6.*