In re Susan **EASON**, Debtor.

Bankruptcy No. 94–05958–BGC–13.

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Feb. 15, 1995.

---

Kenneth Bomany, Birmingham, AL, for debtor.

Hilton–Green Tomlinson, Birmingham, AL, for movant.

David P. Rogers, Jr., Chapter 13 Standing Trustee.

## ORDER OVERRULING OBJECTION TO CONFIRMATION OF PLAN

BENJAMIN COHEN, Bankruptcy Judge.

This matter is before the Court on an *Objection to Confirmation of Plan* filed on October 27, 1994 by Peggy D. Dew, a creditor in this case. After notice, a hearing was held on December 12, 1994. Susan Eason, the Debtor, Kenneth Gomany, the attorney for the Debtor, F. Hilton–Green Tomlinson, the attorney for the Movant, and Charles King, the Assistant Chapter 13 Standing Trustee, appeared. The parties advised the Court that no testimony would be offered. The matter was submitted on the pleadings and arguments of counsel. The parties were given an opportunity to supplement oral arguments with written material and to direct the Court to legal authority.

## I. FINDINGS OF FACT

The facts, as this Court summarizes them from the Creditor's *Objection to Confirmation of Plan,* are not in dispute. The Debtor purchased a home from the Movant on October 16, 1990. She assumed an existing first mortgage owed to New South Federal Savings Bank. She gave the Movant a promissory note for the remaining purchase price and gave the Movant a second mortgage on the property as security for the note. The Debtor was to pay the Movant monthly installments of $225.77, representing interest only. The principal of the second mortgage note was due in full as a "balloon" payment on November 1, 1992.

From the records in this and previous cases, the Court is able to reconstruct the Debtor's bankruptcy history. On January 4, 1993, the Debtor filed a Chapter 13 bankruptcy petition which became Case No. 93–00005. On August 29, 1994, an Order was entered converting that case to Chapter 7. Seven days before that case was dismissed, and on September 9, 1994, the Debtor filed a new Chapter 7 petition which became Case No. 94–05311. On October 10, 1994, one day before the Chapter 7 Trustee filed his Final Report in a No Asset Case in Case No. 93–05311, the Debtor filed the instant Chapter 13 case.

## II. CONTENTIONS

The Debtor proposes to pay the final payment of her "balloon type" mortgage through her Chapter 13 plan. The Movant contends that any proposal to pay a fully matured mortgage through a five-year plan would be an impermissible modification of the mort-

gage agreement she holds with the Movant. The Movant relies on *Nobelman v. American Savings Bank*, —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

As secondary but additional grounds, the Movant contends: (1) that the Debtor's plan discriminates against her as the second mortgagee because the Debtor proposes to pay the first mortgagee directly and (2) that the Debtor has not demonstrated good faith in filing successive and overlapping bankruptcy petitions which the Movant contends were filed only to forestall the Movant's foreclosure efforts.

## III. ISSUES

The determinative issue is whether the Debtor may pay the final payment of a fully matured mortgage through a Chapter 13 plan. That issue requires the Court to decide whether a default exists in an unpaid, fully-matured mortgage, and if so, whether that default may be "cured" under 11 U.S.C. § 1322(b). If such a cure is allowed, the court must then decide whether such a change in the terms of the mortgage would be an impermissible modification of the Debtor's mortgage contract under section 1322(b).[1] In determining whether there is a default some courts make a distinction between mortgages that mature naturally and those that accelerate because of a failure to pay.

1. Section 1322(b) provides in part:
 (b) Subject to subsections (a) and (c) of this section, the plan may
 (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;
 (3) provide for the curing or waiving of any default;
 * * * * * *
 (5) notwithstanding paragraph (2) of this subsection, provide for the curing on any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;
 11 U.S.C. § 1322(b).

2. Often cited cases include *In re Rubottom,* 134 B.R. 641 (9th Cir. BAP 1991) (section 1322(b)(2)

## IV. CONCLUSIONS OF LAW

### A. Fully Matured Mortgage

In addition to *Nobelman v. American Savings Bank,* the Movant relies on *n re La Brada,* 132 B.R. 512 (Bankr.E.D.N.Y.1991) and correctly states that *La Brada* is factually "on point" with the instant case. The Court in *La Brada* held that "a Chapter 13 plan which provides for the payment of a short term balloon mortgage on the debtor's residence that has already matured is an improper modification of a secured claim and contrary to the express language of § 1322(b)(2) and (5)." *Id.* at 515. The *La Brada* court based its decision on *In re Seidel,* 752 F.2d 1382 (9th Cir.1985), the leading case in this area supporting the denial of a debtor's right to modify fully matured mortgages. In relying on *Seidel* the court discussed the split within its own court as it disagreed with and outlined *In re Williams,* 109 B.R. 36 (Bankr.E.D.N.Y.1989), a case decided by the same court, but by a different judge. *Williams* as it turns out is also "on point" with the instant case but the court there reached a conclusion directly opposite from *La Brada.* Successive cases discuss both the *La Brada* and the *Williams* type rulings.[2]

The court in *In re Leach,* 171 B.R. 58 (Bankr.W.D.Ark.1994) explains:

The courts are somewhat split on this issue. One line of cases denies confirma-

applies to junior home mortgages); *In re Fuentes,* 167 B.R. 901 (Bankr.E.D.Mo.1994) (a mortgage note that is accelerated into maturity because of a debtor's failure to make payments is a default and may be "cured", but section 1322(b)(2) prohibits the "modification" of a mortgage note that matures on its own terms because there is no default to cure); *In re Dixon,* 151 B.R. 388 (Bankr.S.D.Miss.1993) (a fully matured mortgage may be paid through a Chapter 13 plan and is not an impermissible modification of the creditor's claim); *In re Leach,* 171 B.R. 58 (Bankr.W.D.Ark.1994) (a debtor may not extend the payments beyond the contract period where the creditor is secured only by the debtor's residence); *In re French,* 174 B.R. 1 (Bankr.D.Mass. 1994) ("curing" a matured obligation would require the reinstatement of the original terms of the debt and would be an be an impermissible modification pursuant to section 1322(b)(2)).

tion of a plan which proposes payments far beyond the time originally contemplated to a creditor which is secured by the debtor's principal residence, because the courts believe that such a plan proposes an impermissible modification of a secured lender's rights. *See, In re Seidel,* 752 F.2d at 1387 (when debt has matured by own terms, and not by lender's acceleration, debtor may not, in effect, create new pay schedule); *In re Manocchia,* 157 B.R. 45 (Bankr.D.R.I.1993) (same). Another line of cases holds that when the debtor's default triggered an acceleration of the debt, a chapter 13 plan may cure the default over the life of the plan without violating section 1322(b)(2). *See Grubbs v. Houston First American Sav. Ass'n,* 730 F.2d 236 (5th Cir.1984). Yet another bankruptcy court holds that it is immaterial whether a debt becomes due based on an acceleration, or by its own terms, and that a debtor may propose a plan which "cures" the debtor's default under section 1322(b)(3). *See, In re Williams,* 109 B.R. at 41.

### (1) Default

The court in *In re Williams* held that the payment of a "balloon" mortgage through a Chapter 13 plan was not an impermissible modification of a secured creditor's rights but was a cure of a default under section 1322(b)(3), "provided that the creditor receives nothing less than full payment over the life of the plan." *Id.* at 39. In *Williams* a second mortgage was given for a loan used to cure a default in a first mortgage and to satisfy an existing second mortgage. In allowing the payment of the second mortgage through the Chapter 13 plan, the court disagreed with the *Seidel* position, and by analogy the *La Brada* position, for two reasons. These were:

(1) The decision creates an unnecessary distinction between the curing of an accelerated mortgage and prohibiting the curing of a mortgage that has matured by its own terms, and (2) the decision adopts an overly restrictive view of the Debtor's

rights to cure not intended by the legislative history and intent of Chapter 13.
*Id.* at 41.

The *Williams* court reasoned that:

To insist on immediate repayment in full of the entire debt due to a secured creditor on a matured pre-petition debt would result in a forced liquidation sale of the debtor's home. This is not what was intended by the authors of Chapter 13 when read in its entirety and conflicts with the general legislative intent upon which Chapter 13 is based.
*Id.* at 42 (citations omitted).

In reaching its decision the *Williams* court relied on *Grubbs v. Houston First American Savings Association,* 730 F.2d 236 (5th Cir. 1984). *Grubbs* held that a Chapter 13 debtor may cure a home mortgage which was accelerated due to the failure of the debtor to make payments and that the debtor could propose to pay the past due amount during the life of a Chapter 13 plan.[3]

The court in the Western division of this district considered a similar matter involving the same issue. In *In re Morphis,* 30 B.R. 589 (Bankr.N.D.Ala.1983) the court found that short-term, non-home related, loans are not included in the scope of section 1322(b)(2). In *Morphis* a second home mortgage was given to Transamerica Financial Services for a non-home related purpose but was secured by the debtor's residence. The court held that Transamerica's claim did not fall within the exception provided in section 1322(b)(2) and could be modified by the debtor so long as the creditor retained its lien and was paid, "the full value of ... [its] collateral as of the date of the petition, with an appropriate discount factor for deferred payment over time." *Id.* at 593 (parenthetical added). The court reasoned that "a change in the repayment amount provided in the pre-petition contract does not 'modify' a § 1322(b)(2) residential secured creditor where that secured creditor receives the full value of its secured claim as required by § 1325(a)(5)(B)." *Id.* at 594.[4]

---

**3.** The *Seidel* court did not decide the issue of modifications of mortgage deficiencies that are

the result of acceleration rather than maturity. *See, Seidel* at n. 1.

**4.** Although *Morphis* and *Williams* involved non-

### (2) Modification and Congressional Intent

 Was the true Congressional intent of section 1322(b)(2), as the *Williams* court found, to protect lenders who provide long-term financing, rather than to prohibit modification of short-term notes?[5] If this case had been filed on October 22, 1994, rather than October 7, 1994, a question of modification would never have arisen, as the newly created 11 U.S.C. § 1322(c) specifically allows a debtor with a short-term mortgage to modify that mortgage pursuant to section 1325(a)(5).[6] Whatever "was" or "may have been" is of no consequence however where a recent change in the law is a clear indication of what Congress believes "should be," and that is that debtors with short-term mortgages should be afforded the protection of the Bankruptcy Code.[7]

---

purchase money second mortgages, given the recent Congressional explanation of the intent of section 1322(b)(2), this Court does not consider the difference significant. In this case the Debtor assumed a long-term mortgage with a federal savings bank and was to pay the movant only monthly installments of interest with the principal due in about two years. The issues are the same and the legal consequences are the same as those in *Morphis* and *Williams*. The recent change in section 1322(b)(2) supports the position that it is not the *type* of loan that is the determining factor but the *term* of the loan that Congress selected to distinguish loans that become due before the completion of Chapter 13 plans from long-term residential home financing. That distinction is now the law as to cases filed after October 22, 1994.

5. This Court has held, as has the Court of Appeals for the Eleventh Circuit, that where the meaning of a statute is clear from its plain language, a court should not look behind that statute. Although the language of 11 U.S.C. § 1322(b)(2) is not absolutely clear as the recent cases interpreting the section demonstrate, *see, In re Hoggle*, 12 F.3d 1008 (11th Cir.1994), what would be this Court's interpretation of that section before the recent changes were made in the statute is a question that will never be answered now that Congress has created an exception to section 1322(b)(2) that allows for the modification of short-term mortgages. This Court considers an exception like this one as a common sense exception to the rules that require acceptance of a statute's plain language. In these situations, the plain language of an original statute, if it were plain, is simply no longer plain. A change not only effects the *current meaning* of a statute but also modifies the *current interpretation of the original meaning* of the same statute.

Generally there are two theories that try to explain the intent of Congress where an existing law is amended. One side believes that Congress is assuring that the existing law is given the meaning that Congress intended it to have from its inception and that Congress is simply refining the existing law to bring it in line with what was the initial Congressional intent. The other side believes that any change in a law, if it is in contrast with existing law, is an actual, intended change, and is not an interpretation of the existing law, albeit to effectuate the original purpose.

There is a third possibility of course, and that is that Congress wanted to and did change the law. This does not seem to be the situation with section 1322(b).

Whichever side one chooses, a Congressional change to an existing law is a clear pronouncement of the current state of that law. Whether such a change overrules case law interpretations of the existing law, or simply explains what should have been, the practical and factual effect of such an amendment guides courts in deciphering the original intent of Congress. If Congress determined on October 7, 1994 that § 1322 should be interpreted in a particular fashion, this Court believes that it need not continue to look for the Congressional intent in the statute. In the case of section 1322(b)(2) where the change is an exception to the existing law rather than a direct change in the existing law, this Court finds more logic in the argument that Congress was clarifying its original intent, rather than rewriting the old law to conform to what Congress intended to do in the first enactment. Disregarding the question of the application of the Act to cases filed after October 22, 1994, what better evidence is there of what Congress intended in the applicable version of § 1322 than Congress' own words in amending that section?

6. Section 301 of the Reform Act, which created new section 1322(c), applies to cases filed on or after October 22, 1994. The Act was passed by the U.S. House of Representatives on October 5, 1994, and by the U.S. Senate on October 7, 1994. The instant case was filed on October 7, 1994. The President signed the Act on October 22, 1994.

7. An argument could be made that because the 1994 Act does not officially apply to this case, that this Court should not even consider the Act. This would be a legitimate argument if the Act were restricted in application to mortgages made after the effective date of the Act, but it is not. The Act is restricted in application to *cases filed after* its effective date. The result is that many mortgages created before the Act will be modified. Consequently, the argument cannot be made that mortgagees did not have the benefit of the Congressional action when they entered into contracts. There is in effect an *ex post facto* application of the Act to existing mortgages.

Section 301(c)(2) of the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106 (1994) reads in part:

> (c) Notwithstanding subsection (b)(2) [11 U.S.C. § 1322(b)(2) ] and applicable nonbankruptcy law—
>
> > (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

Parenthetical added.

Although section 301(c)(2) specifically describes mortgages that mature after bankruptcy plans are proposed, there is no factual, practical or legal difference in a mortgage that fully matures before a bankruptcy is filed and one that matures after a bankruptcy is filed. The court in *In re Rubottom*, 134 B.R. 641 (9th Cir. BAP 1991) explains:

> In *Seidel* the court held that debtors cannot use Chapter 13 to delay payment of an unaccelerated debt that matures before the filing of the petition. *Seidel*, 752 F.2d at 1383. *Harlan [In re Harlan*, 783 F.2d 839 (9th Cir.1986) ] made the rule in *Seidel* applicable to debts that mature before the end of the plan period. *Harlan*, 783 F.2d at 840–41. *See also In re Gavia*, 24 B.R. 573, 574–75 (9th Cir. BAP 1982).

*Id.* at 644, 645 (parenthetical added).

That court explained that time, not type of loan, was the key factor. The court said, "The relevant issue in this case is whether a cure beyond the date on which the note matured is permissible." *Id.* at 645.[8]

 The specific issues before this Court have not been addressed by the Court of Appeals for the Eleventh Circuit, but that court's recognition of the legislative intent of section 1322(b) supports a debtor's right to cure home related loan defaults. In finding that section 1322(b)(5) permits the cure of postconfirmation defaults, the circuit court described what it believed as consistent legislative intent. The court stated in *In re Hoggle*, 12 F.3d 1008 (11th Cir.1994):

> Moreover, we believe that this result is consistent with legislative intent. Chapter 13's overall policy is to facilitate adjustments of the debts of individuals with regular income through flexible repayment plans funded primarily from future income. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 118 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 141 (1978) U.S.Code Cong. & Admin.News 1978, p. 5787. The flexibility permitted in the formulation of Chapter 13 plans represents a central element in the implementation of the Congressional goal to encourage expanded use of Chapter 13. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 117–18 (1977). A main area of expansion was the Code's recognition of the desire of homeowners to save their homes through Chapter 13. Under prior law, a Chapter XIII plan could not provide protection to the debtor's home. As a result, courts evolved a solution, granting injunctions against foreclosure on mortgages during the pendency of Chapter XIII cases where foreclosure would defeat the purposes of the plan, and allowing debtors to cure defaults on their mortgages while maintaining current payments. See *In re Garrett*, 203 F.Supp. 459 (N.D.Ala.1962). Section 1322(b)(5) was intended to codify the practice under which foreclosure was enjoined during the pendency of a Chapter XIII, with the debtor given a reasonable time to cure defaults. 5 Collier on Bankruptcy 1322.09 at 1322–25 (15th Ed.1933). Accordingly, permitting cure of postconfirmation defaults best accords with Congressional intent to permit homeowners to uti-

---

Section 702 of the Act contains the effective date provisions of the amendments.

**8.** A recent article discussing the 1994 Act reads in part:

> The amendment [to Section 1322] clearly allows a home mortgage, the last payment of which was due or will be due prior to the end of a Chapter 13 plan, to be paid by full payment through the plan notwithstanding the non-modification provisions of § 1322(b)(2). Thus, a home mortgage which has "ballooned" prior to the filing of the petition (or which has a balloon feature which will take effect during the plan) may still be paid in full throughout the entire plan term pursuant to § 1325(a)(5).

lize its flexible provisions for debt relief without sacrificing their homes.

*Id.* at 1010.

In reviewing long-term loan situations, the court specifically recognized that, "notwithstanding § 1322(b)(2)'s prohibition against modifications of the rights of home mortgage lenders, § 1322(a)(5) expressly authorizes plans to provide for the timely curing of any default and maintenance of payments during the life of the plan. Section 1322(b)(5) clearly states that a plan may provide for the curing of any default." *Id.* at 1010. The court specifically recognized as well that section 1322(b)(3) operates in the same manner. The court stated:

> Legislative history accompanying § 1322(a)(5) specifies that a plan may "provide for the curing [of] any default" on long-term debt, such as mortgage debt. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 429 (1977). The Senate Report likewise states that under Section 1322(a)(5), a Chapter 13 plan may cure "any default." S.Rep. No. 95–989, 95th Cong.2d Sess. 141 (1978). *With respect to § 1322(b)(3), an analogous section which provides generally for curing defaults, the legislative history unambiguously provides that a plan may provide for the curing or waiving of any default.* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 429 (1977); S.Rep. No. 95–989, 95th Cong.2d Sess. 141 (1978).

*Id.* at 1010–11 (emphasis added).

■ Given the facts of this case, the recent Congressional interpretation of its intent in section 1322(b), the Court of Appeals for the Eleventh Circuit's recognition of the Bankruptcy Code's appreciation of the desire of homeowners to save their homes through Chapter 13 and the clear split of authority between equally persuasive courts that have decided the issue of fully matured mortgages, this Court agrees with *In re Williams* and *In re Morphis* and finds that the Debtor's failure to make her final mortgage payment was a default in the payment of her mortgage and that she should be allowed, pursuant to 11 U.S.C. § 1322(b)(3), to cure that default through her chapter 13 plan.[9] This Court also finds that as long as the Movant is allowed, pursuant to section 1325(a)(5)(B), to maintain her lien and is fully compensated through the Chapter 13 plan with the full value of her claim, with interest, that there is no impermissible modification of the secured creditor's rights under section 1322(b)(2) and (b)(5).[10]

### (3) Substantive Rights

■ This Court's holding to allow the Debtor to cure the default in her mortgage does not alter the Movant's substantive rights in the property including the right to be paid in full with interest and is consistent with the long held protection afforded secured creditors explained in *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). In *Louisville,* the Supreme Court of the United States ruled the Frazier–Lemke Act unconstitutional. That Act allowed a bankrupt farmer to require the bankruptcy court to stay all foreclosure proceedings for a period of five years. During that time the debtor could retain possession of his farm, provided

---

*Norton Bankruptcy Law Adviser,* Jan. 1995, at 12 (parenthetical added).

9. Some courts have reasoned that there is no "default" to be cured where a mortgage matures by its own terms rather than accelerates because of a failure to pay. This Court submits that the default is not related to the acceleration or maturation of the mortgage, but relates to the Debtor's inability to pay, which failure to pay, coincidentally is the very cause of accelerated mortgages and the very reason that some courts allow debtors to cure those accelerated mortgages. Where a mortgage is accelerated because the debtor fails to make payments, the full amount of the mortgage is due and owing. There does not seem to be any reasonable distinction in that occurrence and the one where the full amount of a debt becomes due and owing because of the passage of time. *See, Williams* at 41.

10. Section 1325(a)(5) reads:
> (5) with respect to each allowed secured claim provided by the plan—
> (A) the holder of such claim has accepted the plan;
> (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
> (C) the debtor surrenders the property securing such claim to such holder.

he paid a reasonable rental annually. At the end of the five years, or prior thereto, the debtor could pay into court the appraised price of the property, at which time the bankruptcy court was required to order the mortgagee to turn over full possession and title of the farm property to the debtor. The Court ruled the act unconstitutional as violative of the Fifth Amendment's prohibition against the taking of private property for a public use without just compensation because it required the mortgagee to relinquish the property to the mortgagor free of the lien, *absent payment of the mortgage debt in full, with interest.*[11]

## B. Discrimination

 As an additional ground for her objection, the Movant contends that the Debtor's plan should not be confirmed because the Debtor proposes to pay the first mortgagee under the terms of her first mortgage while proposing to pay the Movant according to modified terms. The Movant contends that treatment of this kind discriminates against the Movant. The Debtor's plan does not specifically propose to pay the first mortgagee directly but this Courts assumes, along with the Movant, that the Debtor will make that provision a part of her plan. If she does, she will in essence classify two secured creditors into two different classes. Because secured creditors have particular properties with different values and interest rates, each may be classified separately. To do so does not intrinsically weigh in favor of any creditor or discriminate against another.

## C. Serial Filings

 As a final argument, the Movant argues that the Debtor's plan should not be confirmed because of the Debtor's successive filings, as the Movant contends, to forestall the Movant's foreclosure of her security interest. Serial filings raise the question of whether a debtor's current bankruptcy filing is made in good faith. This is a factual question. And whenever this Court is called upon to appraise prerequisite "good faith" in a Chapter 13 case, the Court is charged by the Court of Appeals for the Eleventh Circuit accordingly:

11. This Court's holding is also consistent with *Rake v. Wade*, —— U.S. ——, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993) which stated that a secured creditor is entitled under section 1325(a)(5) "to the present value of the arrearages that were paid off under the terms of the plans as an element of an 'allowed secured claim provided for by the plan.'" *Id.* at ——, 113 S.Ct. at 2193. In contrast, *Nobelman v. American Savings Bank*, —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), does not apply. *Nobelman* addressed bifurcation of under-secured homestead mortgages under section 1322(b)(2). In *Nobelman* the debtor attempted to change the character of the creditor's collateral. Here the character of the creditor's collateral remains unchanged where the Creditor is to be paid the present value of her mortgage, in full, with interest over the life of the plan; consequently, there is no *Nobelman* type modification. The Creditor's claim is not devalued. The funds this Creditor will receive are equal to what she would receive if she had been paid timely.

Justice Thomas, the author of the opinion in *Nobelman*, as well as the author of the opinion in *Rake v. Wade*, —— U.S. ——, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993), noted in *Rake:*

Petitioners' argument that "modified" claims cannot include home mortgage claims that have been "cured" does not withstand scrutiny. When a plan cures a default and reinstates payments on a claim, the creditor's contractual rights arising from the default—which in this case included the right to declare all payments due and payable, accelerate the debt, possess the property, collect rents generated by the property, and foreclose on the property, see App. 14–15, 29–30—are abrogated and therefore "modified." These modifications are allowed under § 1322(b)(5) "notwithstanding" the fact that § 1322(b)(2) generally prohibits the modification of the rights of home mortgage holders. Petitioners' construction of § 1322(b)(2) also leads to the incongruous result that only home mortgage claims would be denied the benefits of § 1325(a)(5). By prohibiting modifications of the rights of holders of home mortgage claims, Congress could not have intended, in our view, to afford the holders of these claims less protection than the holders of other secured claims.

*Id.* at —— n. 9, 113 S.Ct. at 2193 n. 9. If the qualities of section 1322(b)(5) *long-term* debts as enumerated by Justice Thomas in *Rake* are modifiable, certainly the same qualities of *short-term* debts may be modified through section 1322(b) as analogized by the circuit court in *Hoggle.*

The factual differences between this case and *Nobelman* are significant. This Debtor seeks to "modify" the method of payment of a secured claim. The debtor in *Nobelman* sought to modify the secured claim. The present Debtor seeks to cure a default in a secured debt. In *Nobelman* the debtor sought to change the creditor's security from secured to unsecured. The two cases are unrelated.

We hold that with section 1325(a)(3) Congress intended to provide bankruptcy courts with a discretionary means to preserve the bankruptcy process for its intended purpose. Accordingly, whenever a Chapter 13 petition appears to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives. If the court discovers unmistakable manifestations of bad faith, ... confirmation must be denied.

Unmistakable manifestations of bad faith need not be based upon a finding of actual fraud, requiring proof of malice, scienter or an intent to defraud. We simply require that the bankruptcy courts preserve the integrity of the bankruptcy process by refusing to condone its abuse.

The cornerstone of the bankruptcy courts has always been the doing of equity. The protections and forgiveness inherent in the bankruptcy laws surely require conduct consistent with the concepts of basic honesty. Good faith or basic honesty is the very antithesis of attempting to circumvent a legal obligation through a technicality of the law.

*In re Waldron,* 785 F.2d 936, 941 (11th Cir. 1986).

From the facts presented, this Court does not find a lack of good faith.[12]

### IV. CONCLUSION

This Court holds that the Debtor's plan to pay a fully matured mortgage through a five-year plan is a cure, under section 1322(b)(3), of the Debtor's default and is not an impermissible modification of the Movant's rights in the purchase money, mortgage agreement the Debtor holds with the Movant and that the Debtor may pay the final payment of the mortgage through a Chapter 13 plan, so long as the Movant receives the full value of her claim, with interest, during the life of the plan. This Court holds further that the Debtor has not discriminated against the Movant by proposing that the first mortgage holder be paid directly and that the facts do not support a contention that the current plan was not proposed in good faith.

Based on the above, the record in this case, along with arguments of counsel, this Court finds that the *Objection to Confirmation of Plan* filed by Peggy D. Dew is due to be overruled. The Court finds that the Debtor's plan satisfies the requirements of section 1325 and is due to be confirmed.

It is therefore **ORDERED** that the *Objection to Confirmation of Plan* filed by Peggy D. Dew is **OVERRULED.** An Order confirming the plan as proposed will be entered contemporaneously with this Order.

---

**12.** There were no facts which would allow this Court to consider the factors of *In re Kitchens,* 702 F.2d 885 (11th Cir.1983).