**In re Mark D. CLAY, Debtor.**

**Bankruptcy No. 96–03959–BGC–11.**

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Sept. 16, 1996.

---

Steven C.R. Brown, Birmingham, Alabama, for Debtor.

Harold Goings, Birmingham, Alabama, for Movants.

### ORDER ON MOTION FOR RELIEF FROM STAY
**(Filed by Bobby E. Collier and Beverly K. Collier)**

BENJAMIN COHEN, Bankruptcy Judge.

The matter before the Court in this Chapter 11 case is a *Motion for Relief from Stay* filed on June 17, 1996 by Bobby E. Collier and Beverly K. Collier, the mortgagees of the debtor. After notice, a hearing was held on August 8, 1996. Dr. Mark D. Clay, the debtor; Steven C.R. Brown, the attorney for debtor; Bobby E. and Beverly K. Collier, the movants; and Harold Goings, the attorney for the movants, appeared. The matter was submitted on testamentary and documentary evidence.

### I. Issue

Because the matter before the Court may be resolved solely as a matter of law, this Court has considered only the issue of whether a Chapter 11 debtor may cure the default of a balloon-type mortgage payment through a Chapter 11 plan. And for the reasons expressed below, this Court finds that in this district, such a cure is not allowed.[1]

### II. Findings of Fact

The facts necessary to decide this matter are undisputed.[2] The parties agree that the debtor purchased a home from the movants and that the debtor failed to make a balloon-type mortgage payment that became due on April 1, 1996. The debtor seeks to cure that default in this Chapter 11 case. The movants are opposed.

### A. Terms of Sale

The parties agree that the debtor purchased real estate from the movants and a partner on March 28, 1991. In general terms the purchase was to be made through monthly payments, based on a 30-year mortgage amortization, beginning in May 1991 for approximately five years after which a final balloon payment of the balance due would be paid on April 1, 1996.[3]

### B. Purchase Price

The purchase price was $209,000.00. A $15,000.00 downpayment was due at the closing of the sale. In addition to the monthly payments, two $5,000.00 payments were due, one for October 1991 and one for April 1992 and a $10,000.00 payment was due for April 1993. The debtor made these payments although the $10,000.00 was made in the form of a promissory note.

### C. Balance Due

The parties agree that the debtor has paid approximately $41,000.00 toward the purchase of the property but that he is in default for one month's payment and in default for failing to make the April 1, 1996 balloon payment for the balance due. The Mr. Collier testified that the current balance due,

---

1. The issue before the Court arises by way of a Motion for Relief from Stay. Under section 362(d)(1) of the Bankruptcy Code a party is entitled to relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party...." 11 U.S.C. § 362(d)(1). In the alternative, under section 362(d)(2) a party is entitled to relief from the stay of an act against property if the debtor does not have equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2).

2. While this Court recites the facts found from the evidence presented, the Court has not relied on all of those facts in making its decision in the pending matter. The facts are established here in the event of future litigation. The disputed facts are however resolved as contained in this Order.

3. This case was filed on June 11, 1996.

including expenses is $178,024.37. Movants Ex. 4.

## D. Negotiations

The debtor testified that all of his negotiations were with the movants' partner Hyram Gilbert, although the note (Movants' Ex. 1) and the mortgage (Movants' Ex. 2) were between the debtor and the debtor's wife and the movants.[4] The debtor explained that he had approached Mr. Gilbert to discuss construction of a house and that Mr. Gilbert offered the subject property to him. The debtor testified that after many calls to him from Mr. Gilbert (approximately 20) asking him to buy the property, the debtor agreed. The debtor testified that Mr. Gilbert promised that if the debtor was unable to make the balloon payment that new financing would be available. Mr. Collier testified that no such promise was made and that the original sale and financing by him was made as a consideration to the debtor because the debtor had filed a previous bankruptcy petition and according to Mr. Collier was having some problem obtaining financing to purchase any other property.[5]

## E. Condition and Value of the Property

The parties could not agree on the current condition and fair market value of the property. Mr. Collier testified that, because of the condition of the house, the property was worth no more than the balance due. Mr. Collier testified that the house was in generally bad condition although he had not been in the house and had no personal knowledge of the condition. Mr. Collier did not have an opinion on the actual value of the property. The debtor testified that the condition of the house was good and that any existing problems were cosmetic. The debtor testified that the fair market value of the house was

$195,000.00. The debtor testified that since the house was built, the unfinished downstairs has been finished to include two bedrooms and a bath and a 600 square foot den. The debtor testified that he gave the movant a promissory note of $10,000.00 to pay for the bedroom and bath completion but that he paid $15,000.00 from his personal funds for the den improvement. The total amount of improvements according to the debtor is approximately $25,000.00.[6] This Court finds that the only admissible evidence of the condition and fair market value of the property is that offered by the debtor.

## F. Debtor's Income

The debtor is a doctor of chiropractic medicine. For many months before he filed the current case he was physically incapacitated because of back and knee problems and could not work. He testified that his financial problems were directly associated with his medical problems. The debtor testified that prior to ceasing work his annual income from his chiropractic practice was $190,000.00 to $200,000.00. He is currently working with another doctor as he begins to reestablish his practice. His current monthly income is $2,000.00 to $3,000.00 but he expects that this income will approach his former income when his practice grows.

## G. Tax Liens

The parties agree that the debtor is currently liable for past due taxes of approximately $70,000.00 and that tax liens for that amount are attached to the property.

## H. Chapter 11 Plan

The debtor has not filed a plan in this Chapter 11 case and has not made any proposal for adequate protection to the movants.[7]

---

4. Mr. Gilbert is deceased.

5. The debtor filed a Chapter 13 bankruptcy petition on November 14, 1989 which became case no. 89–13510. That case was filed on November 15, 1989 and was dismissed on February 14, 1991. The debtor filed a joint Chapter 7 bankruptcy petition on March 5, 1991 which became case no. 91–01744. The debtors received their discharge on June 12, 1991.

6. The debtor did not explain whether the bedroom-bath $10,000.00 note was the same or different from the April 1993 $10,000.00 note.

7. The Court may take judicial notice of the documents in the debtors' file. *Freshman v. Atkins*, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925) (court may take judicial notice of and give effect to its own records in another, but interrelated, proceeding, so that district court could take judicial notice of pendency of application for discharge in prior bankruptcy proceedings and thereby preclude discharge in a second voluntary proceeding in respect to the same debts as listed in first proceeding); *Cash Inn of Dade, Inc. v. Metropolitan Dade County*, 938 F.2d 1239 (11th Cir.1991) (district court may take judicial notice

### III. Contentions

The debtor contends that the mortgage default cure provisions of Chapter 13 of the Bankruptcy Code apply to this Chapter 11 case and that the debtor may, pursuant to 11 U.S.C. § 1322 cure his mortgage default through a Chapter 11 plan. The debtor contends specifically that he may pay the April 1996 balloon payment over the life of that plan. The movants contend that the Bankruptcy Code does not allow for such a cure whether in Chapter 11 or Chapter 13 and even if it did that the debtor has not offered adequate protection to the movants in order to defeat the motion for relief from stay.

### IV. Discussion

■ The Court finds that while defaults in mortgage payments that occur because of a failure to make a designed balloon payment may be cured through a Chapter 13 bankruptcy, the same type of default may not be cured in a Chapter 11 case. The Court bases this finding on the recent amendments to both Chapters 11 and 13 of the Bankruptcy Code in regards to defaults in mortgage payments secured by debtors' residences, on the reversal of the order entered by this Court in *In re Eason,* 181 B.R. 127, (Bankr.N.D.Ala. 1995), *rev'd Dew v. Eason (In re Eason),* CV–95–G–0729–S (N.D.Ala. April 30, 1996) and on the procedures that control the different chapters.

#### A. Amendments to Chapters 11 and 13

Congress addressed the issue of curing defaults in balloon mortgage payments in Section 301(c)(2) of the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106 (1994). That section added Section 1322(c)(2) to the Bankruptcy Code as an exception to Section 1322(b)(2). Section 1322(c)(2) reads in part:

(c) Notwithstanding subsection (b)(2) [11 U.S.C. § 1322(b)(2) ] and applicable non-bankruptcy law—

(2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

*Id.* 11 U.S.C. § 1322(c)(2) (parenthetical added).

In the same Act Congress addressed the rights of a Chapter 11 debtor to modify the rights of holders of secured claims that are secured by the debtor's residence. Section 206(3) of the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4123 (1994) added Section 1123(b)(5) to the Bankruptcy Code to allow a Chapter 11 debtor to propose a plan that would:

modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence....

*Id.* 11 U.S.C. § 1123(b)(5). The above language is identical not only to the current language of Section 1322(b)(2) but is also identical to the pre–1994 amendment language of Section 1322(b)(2) as it existed without the addition of Section 1322(c)(2). See 11 U.S.C. § 1322(b)(2) (1978). When Congress added Section 1322(c)(2) as an exception to Section 1322(b)(2) it allowed for the curing of defaults in balloon-type mortgage payments in Chapter 13 cases. When Congress added Section 1123(b)(5) to Chapter 11, Congress added the *language* of Section 1322(b)(2) but did not include the *excepting language* of Section 1322(c)(2); consequently, Chapter 11 became restrictive where it was not and Chapter 13 became more permissive where it had not been.

#### B. Supporting Code Sections

The debtor argues that the balloon payment cure provisions of Chapter 13 apply to this case, or that at least the right to make such should be allowed in a Chapter 11 case.

---

of public records within its files relating to particular case before it or to other related cases); *ITT Rayonier, Inc. v. U.S.,* 651 F.2d 343 (5th Cir.1981) (court may take judicial notice of its own records or of those of inferior courts); *Kin-*

*nett Dairies, Inc. v. Farrow,* 580 F.2d 1260 (5th Cir.1978) (trial court did not err in taking judicial notice of materials in court's own files from prior proceedings).

This Court disagrees. The importance of the difference in the actions of Congress in amending different sections of the same statute in different manners is significant. The Court of Appeals for the Eleventh Circuit recently recognized a comparable situation in comparing Section 523(a)(1)(C) of the Bankruptcy Code to Section 7201 of the Internal Revenue Code. Judge Stanley F. Birch, Jr. wrote:

> Where Congress knows how to say something but chooses not to, its silence is controlling. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537, 114 S.Ct. 1757, 1761, 128 L.Ed.2d 556 (1994) (" '[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another,' and that presumption is even stronger when the omission entails the replacement of standard legal terminology with a neologism.") (citation omitted) (quoting *Chicago v. Environmental Defense Fund*, 511 U.S. 328, 338, 114 S.Ct. 1588, 1593, 128 L.Ed.2d 302 (1994)); *United States v. Jordan*, 915 F.2d 622, 628 (11th Cir.1990) (" ' "*[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.*" ' " (quoting *Rodriguez v. United States*, 480 U.S. 522, 525, 107 S.Ct. 1391, 1393, 94 L.Ed.2d 533 (1987) (per curiam))), *cert. denied*, 499 U.S. 979, 111 S.Ct. 1629, 113 L.Ed.2d 725 (1991). *Cf. Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17, 100 S.Ct. 1905, 1910, 64 L.Ed.2d 548 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.").

*Haas v. Internal Revenue Service (In re Haas)*, 48 F.3d 1153, 1156–1157 (11th Cir. 1995) (emphasis added). This Court finds it significant that Congress amended one part of a statute in one fashion, and at the same time and through the same legislation amended another part of the *same* statute to include an opposing provision. This Court may reasonably conclude that Congress intended to provide different relief for Chapter 13 debtors than that provided Chapter 11 debtors although the default is the same for both debtors.

This Court's holding in the instant matter is inconsistent with this Court's holding in conjunction with a debtor's right to cure similar balloon-type defaults in Chapter 13 cases, as well as being inconsistent with similar interpretations of Section 1322(b)(2) by other courts that have allowed a Chapter 13 debtor to cure balloon-type mortgage payment defaults. This Court recognized, as have other courts, that there were provisions in the pre–1994 edition of Chapter 13 that allowed such curing, notwithstanding the restrictive language of Section 1322(b). In *In re Eason*, 181 B.R. 127 (Bankr.N.D.Ala.1995), *rev'd Dew v. Eason (In re Eason)*, CV–95–G–0729–S (N.D.Ala. April 30, 1996), this Court wrote:

> Given the facts of this case, the recent Congressional interpretation of its intent in section 1322(b), the Court of Appeals for the Eleventh Circuit's recognition of the Bankruptcy Code's appreciation of the desire of homeowners to save their homes through Chapter 13 and the clear split of authority between equally persuasive courts that have decided the issue of fully matured mortgages, this Court agrees with *In re Williams* [109 B.R. 36 (Bankr. E.D.N.Y.1989)] and *In re Morphis* [30 B.R. 589 (Bankr.N.D.Ala.1983)] and finds that the Debtor's failure to make her final mortgage payment was a default in the payment of her mortgage and that she should be allowed, pursuant to 11 U.S.C. § 1322(b)(3), to cure that default through her chapter 13 plan. This Court also finds that as long as the Movant is allowed, pursuant to section 1325(a)(5)(B), to maintain her lien and is fully compensated through the Chapter 13 plan with the full value of her claim, with interest, that there is no impermissible modification of the secured creditor's rights under section 1322(b)(2) and (b)(5).

*Id.* at 134 (footnotes omitted).

In making its ruling in *In re Eason* this Court recognized and relied upon the opinion

of Court of Appeals for the Eleventh Circuit in *In re Hoggle,* 12 F.3d 1008 (11th Cir.1994). This Court quoted from *In re Hoggle* in its opinion in *In re Eason.* That opinion reads in part:

Moreover, we believe that this result is consistent with legislative intent. Chapter 13's overall policy is to facilitate adjustments of the debts of individuals with regular income through flexible repayment plans funded primarily from future income. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 118 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 141 (1978) U.S.Code Cong. & Admin.News 1978, p. 5787. The flexibility permitted in the formulation of Chapter 13 plans represents a central element in the implementation of the Congressional goal to encourage expanded use of Chapter 13. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 117–18 (1977). A main area of expansion was the Code's recognition of the desire of homeowners to save their homes through Chapter 13. Under prior law, a Chapter XIII plan could not provide protection to the debtor's home. As a result, courts evolved a solution, granting injunctions against foreclosure on mortgages during the pendency of Chapter XIII cases where foreclosure would defeat the purposes of the plan, and allowing debtors to cure defaults on their mortgages while maintaining current payments. See *In re Garrett,* 203 F.Supp. 459 (N.D.Ala.1962). Section 1322(b)(5) was intended to codify the practice under which foreclosure was enjoined during the pendency of a Chapter XIII, with the debtor given a reasonable time to cure defaults. 5 Collier on Bankruptcy 1322.09 at 1322–25 (15th Ed.1933). Accordingly, permitting cure of postconfirmation defaults best accords with Congressional intent to permit homeowners to utilize its flexible provisions for debt relief without sacrificing their homes.

*In re Hoggle,* 12 F.3d 1008, 1010 (11th Cir. 1994).

In *In re Eason* this Court added:

In reviewing long-term loan situations, the court specifically recognized that, "notwithstanding § 1322(b)(2)'s prohibition against modifications of the rights of home mortgage lenders, § 1325(b)(5) expressly authorizes plans to provide for the timely curing of any default and maintenance of payments during the life of the plan. Section 1322(b)(5) clearly states that a plan may provide for the curing of any default." *Id.* at 1010. The court specifically recognized as well that section 1322(b)(3) operates in the same manner. The court [Court of Appeals for the Eleventh Circuit] stated: Legislative history accompanying § 1322(b)(5) specifies that a plan may "provide for the curing [of] any default" on long-term debt, such as mortgage debt. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 429 (1977). The Senate Report likewise states that under Section 1322(b)(5), a Chapter 13 plan may cure "any default." S.Rep. No. 95–989, 95th Cong.2d Sess. 141 (1978). *With respect to § 1322(b)(3), an analogous section which provides generally for curing defaults, the legislative history unambiguously provides that a plan may provide for the curing or waiving of any default.* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 429 (1977); S.Rep. No. 95–989, 95th Cong.2d Sess. 141 (1978).

*In re Eason,* 181 B.R. 127, 134 (Bankr. N.D.Ala.1995) (quoting *In re Hoggle* at 1010–1011 (parenthetical and emphasis added)).

The language of Section 1322(b)(3) of the Bankruptcy Code, recognized by the Court of Appeals for the Eleventh Circuit providing for the cure of any default exists currently for Chapter 11 debtors through Section 1123(a)(5)(G) of the Bankruptcy Code which allows a debtor to propose a plan that will "provide adequate means for the plan's implementation, such as—curing or waiving of any default." 11 U.S.C. § 1123(a)(5)(G). This language and the appeals court's recognition of it in Chapter 13 cases, appears to support the debtors argument. The law in this district however has been interpreted otherwise.

The District Court for the Northern District of Alabama has held that the "language" found in Section 1123(b)(5), the provision that allows a Chapter 11 debtor to modify the rights of holders of secured claims except those secured only by a security interest in

real property that is the debtor's principal residence, would not, without the amending language now found in Section 1322(c)(2), regardless of the appeals court's recognition of the language quoted above, allow a debtor to modify a secured creditor's interest where that interest is secured only by the debtor's residence. In the order issued by the United States District Court for the Northern District of Alabama that reversed this Court's order in *In re Eason* the district court found that the language of Section 1322(b)(2), now the language of Section 1123(b)(5), appears clear. In so doing the court wrote:

> Thus, properly limiting the legal analysis to the preamended § 1322, this court holds that subsection (c) thereof prohibits any modification of Dew's rights as a holder of a secured claim on the debtor's principal residence. Eason, unfortunately, appears to be a victim of bad timing in the filing of her petition; nevertheless, she is unable to receive benefit of § 1322(c) as amended.

*Dew v. Eason (In re Eason)*, CV–95–G–0729–S (N.D.Ala. April 30, 1996) at 7.[8]

While the district court's ruling would not be applicable to a currently filed Chapter 13 case, the court did rule that the exact language now found in Chapter 11 does not allow for a cure like the one the debtor proposes even with the general rule that both Chapter 13 and Chapter 11 debtors may provide for the "curing or waiving of any default" through a plan of reorganization. Consequently the current situation for Chapter 11 debtors in this district is that not only did Congress restrict a Chapter 11 debtor's right to cure a mortgage default when it added Section 1123(b)(5) but that the district court in this district has recognized that such language strictly prohibits the curing of a default in a balloon-type mortgage.

## C. Chapter 13 Procedures

Chapter 13 procedures are designed to allow for the curing of defaults of balloon-type mortgage payments. When a debtor files a Chapter 13 case, the debtor is required to propose a plan that tells a mortgagee how, when and with what funds the balloon payment will be paid. The debtor is required to make payments on the default and the payments must begin quickly. In a Chapter 11 case a mortgagee with a balloon-type mortgage must wait for the debtor to file a plan of reorganization and then must wait for the confirmation process to be completed. As most Chapter 11 debtors do not file plans before the 120 day exclusivity period given them under Section 1121(b) of the Bankruptcy Code, and where the process of confirmation is lengthy in most cases, Chapter 11 case mortgagees must wait a significant time before learning of the treatment of their balloon-type mortgage payments and even then a plan of reorganization could be proposed for an extended period of time. In contrast Chapter 13 plans of reorganization typically extend for 36 to 60 months giving both debtors and creditors a defined period in which to act.

## V. Conclusion

For the reasons expressed above, the Court finds as a matter of law that Section 1123(b)(5) of the Bankruptcy Code prohibits a Chapter 11 debtor from curing the default of a balloon-type mortgage payment within a plan of reorganization. The substantive issue of whether such a cure should be allowed in this case, based on the substantive facts before this Court, is an issue this Court need not consider. However, if the debtor chooses to convert this case to one under Chapter 13 (and such conversion is allowed) this Court may be requested to make such a consideration.[9]

---

8. The court's reference to Ms. Eason's "bad timing" is a reference to the fact that Ms. Eason filed her bankruptcy case on October 7, 1994 *the same day* that Section 301 of the Reform Act, which created new section 1322(c)(2) passed Congress, but 15 days before the new section became effective on October 22, 1994, the date the act was signed by the President.

9. If relief from the stay is granted before the debtor is given an opportunity to convert this case to one under chapter 13 there is some question of whether the provisions allowing a cure of the current default would apply to a future case or to a converted case where relief from stay had previously been granted. See *British Aviation Insurance Co., Ltd. v. Menut (In re State Airlines, Inc.,* 873 F.2d 264 (11th Cir.1989) where the Court of Appeals for the Eleventh Circuit held that the conversion of a case from Chapter 11 to Chapter 7 does not reimpose the automatic stay where that stay was lifted in the originally filed case.

For the reasons expressed above, the Court finds that if the debtor does not take the appropriate action, within 10 days of the date of this order, to convert this case to one under Chapter 13, cause exists for granting the *Motion for Relief from Stay* and such motion will be granted without further notice and order of this Court. On the other hand, if the Debtor takes the appropriate action, within 10 days of the date of this order, to convert this case to one under Chapter 13, the *Motion for Relief from Stay* is due to be denied, at least on a temporary basis. If the case is converted, and if the movants, after reviewing the debtor's Chapter 13 proposed plan of reorganization choose to seek relief from stay, this Court will consider whether that relief from the stay, as a matter of fact, should be granted. To invoke this Court's substantive consideration of whether relief from stay should be granted in a then converted Chapter 13 case, the movants need only file a Motion for Reconsideration that asks this Court to consider the substantive aspects of their motion. Notice of that request will be sent and the matter will be set for hearing.[10]

### VI. Order

It is therefore **ORDERED, ADJUDGED AND DECREED,** that:

1. If the debtor does not take the appropriate action, within 10 days of the date of this order, to convert this case to one under Chapter 13, the *Motion for Relief from Stay* is **GRANTED** without further notice and order of this Court;

2. If the Debtor takes the appropriate action, within 10 days of the date of this order, to convert this case to one under Chapter 13, the *Motion for Relief from Stay* is temporarily **DENIED.** The movants will of course have whatever rights they would otherwise have to object to the conversion. But if the conversion is allowed and if the movants, after reviewing the debtor's proposed plan of reorganization, choose to continue to seek relief from stay this Court will consider whether that relief, as a matter of fact, should be granted. If all factors are satisfied, to invoke this Court's substantive consideration of whether relief from stay should be granted in the then converted Chapter 13 case, the movants need only file a Motion for Reconsideration that asks this Court to reconsider the temporary denial of their motion and to consider the substantive aspects of their motion. Notice of that request will be sent and the matter will be set for hearing.

3. If the Debtor takes the appropriate action, within 10 days of the date of this order, to convert this case to one under Chapter 13, and the conversion is allowed, but the movants do not choose, within 10 days of an order allowing the conversion, to seek relief from the stay, the *Motion for Relief from Stay* is **DENIED** without further notice or order of this Court.

---

10. An evidentiary hearing may not be necessary. But if the debtor files a Chapter 13 plan, the movants and the debtor may want an opportunity to argue against or for that plan in light of the facts established in this Order.