In re Kyle W. LENNINGTON and Kay N. Lennington, Debtors.

No. 01–83471.

United States Bankruptcy Court, C.D. Illinois.

Jan. 30, 2003.

Lars Ostling, Bloomington, IL, for Debtors.

Joseph J. Circelli, Darien, IL, for Wells Fargo Home Mortgage.

## OPINION

THOMAS L. PERKINS, Bankruptcy Judge.

Before the Court is the objection filed by Wells Fargo Home Mortgage ("WELLS FARGO") to confirmation of the Chapter 11 plan filed by the Debtors, Kyle

W. and Kay N. Lennington ("DEBT-ORS"). WELLS FARGO contends that debtors in Chapter 11, unlike Chapter 13, may not cure a prepetition residential mortgage arrearage in installment payments through the plan.

WELLS FARGO is the holder of a promissory note secured by a first mortgage on the DEBTORS' principal residence. After the DEBTORS fell behind on their mortgage payments in early 2001, WELLS FARGO commenced foreclosure proceedings and a judgment for foreclosure was entered on July 19, 2001.

The DEBTORS filed a Chapter 11 petition on August 14, 2001, prior to the foreclosure sale. The DEBTORS value their residence at $225,000.00. WELLS FARGO filed a proof of claim, asserting a prepetition arrearage due of $19,924.92, and an estimated payoff balance of $112,495.77. Their residence is also encumbered by a second mortgage held by CitiFinancial Mortgage Company, with a petition date balance of $27,569.15. The DEBTORS have continued to pay their regular postpetition mortgage payments.

In their Chapter 11 plan, the DEBTORS propose to cure the prepetition arrearage on the WELLS FARGO mortgage in sixty equal monthly installments, with interest at 9%, while continuing to pay the current mortgage payments as they come due. WELLS FARGO objects to the plan's arrearage cure proposal, arguing that the plan impermissibly modifies its rights, contrary to Section 1123(b)(5) of the Bankruptcy Code. A confirmation hearing was held on October 21, 2002, and the matter was taken under advisement. Both the DEBTORS and WELLS FARGO have filed briefs in support of their position.

Tracking the language of Section 1322(b)(2), Section 1123(b)(5) provides that a plan may:

[M]odify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1123(b)(5). The purpose of this provision, added to Chapter 11 by the Bankruptcy Reform Act of 1994, was to equalize the treatment of residential mortgages in Chapters 11 and 13. H.R.Rep. No. 835, 103d Cong., 2d Sess. 46 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3354; *Lomas Mortgage, Inc. v. Louis,* 82 F.3d 1, 6 (1st Cir.1996). It is undisputed that WELLS FARGO holds a claim secured only by a security interest in real property that is the DEBTORS' principal residence.

Pointing to its right, by contract, to demand full, immediate payment of the arrearage, WELLS FARGO contends that it cannot be forced, under non-bankruptcy law, to accept a cure over time. Thus, it says, the plan's attempt to force a cure in installment payments constitutes a "modification" of its rights that is prohibited by Section 1123(b)(5). Acknowledging that Chapter 13 debtors are permitted to cure a prepetition residential mortgage arrearage in plan installments despite an identical antimodification clause in Section 1322(b)(2), WELLS FARGO contends that the critical distinction is found in the cure provision of Section 1322(b)(5) which provides that a plan may:

[N]otwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

11 U.S.C. § 1322(b)(5). The absence of a duplicate provision in Chapter 11 is inter-

preted by WELLS FARGO to evidence a Congressional intent to prohibit a cure in installment payments through a Chapter 11 plan.

It is true that this exact language is not to be found in Chapter 11. Given the very different purposes of Chapter 11 and Chapter 13, however, not much can be made of that dissimilarity. Unlike Chapters 12 and 13, the provisions of Chapter 11 and Chapter 13 are not at all parallel. WELLS FARGO'S reliance on the absence of parallel provisions pertaining to the treatment of residential mortgages between Chapters 11 and 13 overlooks the unique framework of Chapter 11, as well as the primary purpose of Section 1123(b)(5).

Through a Chapter 11 plan, a debtor may "impair or leave unimpaired any class of claims, secured or unsecured." 11 U.S.C. Section 1123(b)(1). Impairment of a claim is defined to include the alteration of "the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." *Matter of Kennedy,* 158 B.R. 589, 596 (Bankr.D.N.J.1993). Under Section 1123(a)(5)(G), a plan can provide for a cure of a default, and under Section 1123(a)(5)(E), a plan may modify any lien.

While a Chapter 13 debtor's right to reinstate an accelerated debt is contained in Section 1322, addressing the contents of the Chapter 13 plan, its counterpart is found not in Section 1123, but in Section 1124, which fleshes out the concept of impairment referred to in Section 1123(b)(1). Section 1124 provides:

> Except as provided in section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan—
>
> (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or
>
> (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—
>
> (A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;
>
> (B) reinstates the maturity of such claim or interest as such maturity existed before such default;
>
> (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and
>
> (D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

11 U.S.C. § 1124.

Where a Chapter 11 plan provides for the cure of a default, reinstatement of the original terms of the loan, compensation for damages, and does not otherwise alter the rights of the mortgagee, the claim of the mortgagee is unimpaired, as defined by Section 1124(2).[1] The intended purpose of this provision, as recognized by the Seventh Circuit Court of Appeals in *Matter of Madison Hotel Associates,* 749 F.2d 410, at 423 (7th Cir.1984), is "to per-

---

1. In their plan, the DEBTORS classify WELLS FARGO'S claim as impaired. The plan proposes to pay interest on the prepetition arrearage at the rate of 9%, whereas the mortgage provides for interest at the rate of 9.2%.

mit a Chapter 11 debtor to cure the default of an accelerated loan, reinstate the maturity of that loan as it existed before default, and thereby 'reverse a contractual or legal acceleration.'" *See also, In re Taddeo,* 685 F.2d 24 (2nd Cir.1982) (right to cure in Chapter 11 means the same thing as in Chapter 13, where a prepetition arrearage may be paid over a reasonable period).

Courts have long recognized the right of an individual Chapter 11 debtor to reinstate a residential mortgage and cure a prepetition arrearage in installment payments through their plan of reorganization. *Valente v. Savings Bank of Rockville,* 34 B.R. 362 (D.Conn.1983). WELLS FARGO cites no opinion that holds or even suggests that the addition of Section 1123(b)(5) in 1994 was intended to effect the reversal of policy that WELLS FARGO imputes. Section 1123(b)(5) did not mark a sea change. It prohibits only "modification" of a residential mortgage, making no reference to a debtor's right to cure. WELLS FARGO errs in equating one with the other. The bankruptcy concepts of "cure" and "modification" are to be regarded as separate and distinct. *In re Garcia,* 276 B.R. 627 (Bankr.D.Ariz. 2002). Applying this distinction in the Chapter 13 context, the court in *Garcia* explained:

> The conclusions of [*Grubbs v. Houston First Am. Sav. Ass'n,* 730 F.2d 236 (5th Cir.1984)] and [*Nobelman v. Am. Sav. Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993)] that modification and cure are distinct, mutually exclusive topics makes basic sense, for a reason much simpler than the tortured legislative history summarized in *Grubbs.* Both the automatic stay and cure deal with past defaults, whereas the modifications permitted (or prohibited) by § 1322(b)(2) concern future obligations. Thus the antimodification provision says nothing about what can or must be done about past defaults, but merely provides that the debtor's future obligations to a lender cannot be modified from what is provided in the loan documents.[2]

That analysis holds true in Chapter 11 as well as Chapter 13. Section 1123(b)(5) did not abrogate a Chapter 11 debtor's right to cure a default and reinstate a home mortgage.

All courts recognize that Congress does not legislate in a vacuum. *In re Thinking Machines Corp.,* 67 F.3d 1021 (1st Cir.1995). The key to a statute's meaning may be found in the legislative backdrop and the ends that the legislature

---

**2.** Moreover, as the court in *Garcia* explained, the Section 1322(b)(5) preface, the very focus of WELLS FARGO'S argument, is supererogatory, added late in the legislative process:

> As originally introduced, § 1322 merely provided that a debtor's plan might modify the rights of holders of secured claims or of unsecured claims, § 1322(b)(2), cure or waive any default, § 1322(b)(3), or cure a default in long term debt within a reasonable time and maintenance of payments while the case is pending, § 1322(b)(5). Thus "modification" and "cure" were regarded as covering distinct situations, neither being an exception to the other because there was no overlap. In the Senate, however, secured creditors objected to the modification provision, but not the cure provision. As a result, under the Senate bill, debts wholly secured by real estate mortgages were excluded from the debtor's right to modify. But in the floor amendments agreed to by both houses, the Senate exception was further restricted to debts secured by a debtor's principal residence. Neither in the Senate nor in the House–Senate compromise was there any effort to restrict the right to cure, but to avoid any ambiguity that might have been created by the new exception to the modification provision, "notwithstanding" was added to (b)(5) in the House–Senate floor amendments. 276 B.R. at 633–34.

sought to achieve. *In re McLaren*, 227 B.R. 810 (Bankr.S.D.Ill.1998). Prior to the 1994 Amendment, Chapter 11 debtors could strip a home mortgagee's lien down to the value of the collateral. *Wade v. Bradford*, 39 F.3d 1126 (10th Cir.1994). By contrast, Chapter 13 debtors were prohibited from modifying the secured claim of home mortgage lenders, and were limited to curing the default over the term of the plan while maintaining current payments on the mortgage, in order to save their homes. Courts had rejected the urging of mortgagees to "judicially insert" Chapter 13's anti-modification provision into Chapter 11. *Kennedy*, 158 B.R. at 595–96. Section 1123(b)(5) was enacted to equalize the treatment of residential mortgages in Chapters 11 and 13, by preventing Chapter 11 debtors from "modifying" the mortgagee's rights by bifurcating an undersecured residential mortgage into a secured claim and an unsecured claim, thereby stripping down the mortgage to the value of the house. Section 1123(b)(5) was not intended to usurp the longstanding right of reinstatement in Chapter 11 which, consistent with that under Chapter 13, permitted the cure of a prepetition mortgage arrearage on an installment basis.

WELLS FARGO relies on *In re Clay*, 204 B.R. 786 (Bankr.N.D.Ala.1996), a Chapter 11 case involving a proposed cure of a default on a fully matured mortgage, where the entire balance had come due a few days prior to bankruptcy in the form of a balloon payment. Holding that a Chapter 11 debtor was prohibited from extending the term of a balloon-type mortgage within a plan of reorganization, the court relied, in part, upon the changes made with respect to the treatment of home mortgages by the Bankruptcy Reform Act of 1994. Specifically, because that Act added Section 1322(c)(2), permitting the modification of mortgages that come due during the term of the plan, to Chapter 13, but did not add a similar provision to Chapter 11, while at the same time adding the general antimodification language in Section 1123(b)(5), the court concluded that Congress must have intended to limit the benefit of Section 1322(c)(2) to debtors in Chapter 13 cases. *Clay*, involving a modification of the term of a fully matured mortgage, not the cure of a default in regular monthly mortgage payments, is readily distinguishable from the case at bar.

WELLS FARGO'S position finds no support in the case law or the Bankruptcy Code itself. WELLS FARGO has not offered and this Court does not perceive any reason why Congress would want to deprive those few individual Chapter 11 debtors from saving their homes by curing a prepetition arrearage in installments, when the same thing happens in the majority of the multitude of Chapter 13 filings. Prohibiting a debtor proceeding under Chapter 11 from curing a prepetition mortgage default in installment payments, while a similarly situated debtor proceeding under Chapter 13 is permitted to do so, would be contrary to the intent of Congress to conform the treatment of residential mortgages under Chapter 11 to that under Chapter 13. This Court holds that individual Chapter 11 debtors are permitted to cure a prepetition residential mortgage arrearage in installment payments, through the Chapter 11 plan, while remaining current on their postpetition payments.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered denying WELLS FARGO'S objection to the DEBTORS' plan.

### ORDER

For the reasons stated in an Opinion filed this day, IT IS HEREBY ORDERED that the objection filed by Wells Fargo Home Mortgage to the Chapter 11 plan of reorganization filed by the Debtors is DENIED.